STONE ET AL. vs. BRITTON.

1. When defendant in execution, having an equitable title to land, directs the sheriff to levy on it, which the latter does, and the land is sold, and the proceeds applied to the satisfaction of the execution, and defendant delivers up possession to the purchaser, assuring him that the title is perfectly good, he is estopped from setting up the legal title, subsequently acquired, against sub-purchasers for valuable consideration, who have paid the purchase money and received conveyances without notice of the defect in title, and will be enjoined in equity from proceeding in ejectment at law.

ERROR to the Chancery Court of Talladega.

Heard before the Hon. DAVID G. LIGON.

The facts will be found in the opinion of the court.

WHITE & PARSONS, for plaintiffs in error:

The question presented by this record has, in effect, been decided by this court in the case of McPherson v. Walters, 16 Ala. 715. See also Dongrey v. Topping & Holmes, 4 Paige 94; Read v. Heasley, 2 B. Monroe 254.

Where a man encourages another to settle upon and improve land, and expend his labor and money upon it, he will not afterwards be permitted to take it from him, although he has an older and better title to it. McElvey v. Truby, 4 Watts & Serg. 323: McCormick v. McMutin, 4 Watts 195; Eply v. Withword, 7 ib. 163; Carr v. Wallace, 7 ib. 394.

It is said in the last case cited: "There is no principle of equity and public policy better settled than this: If one knowingly, though passively, suffer another to purchase and

spend money on land, under an erroneous opinion of title, without making known his claim, he shall not afterwards be permitted to exercise his legal right against such person." See also Hatch v. Kimball, 16 Maine R. 106; Marshall v. Pierce, 12 N. Hamp. 136–7; Moore v. Child & Carlton, 6 ib. 521. So a man may be estopped by matter *in pais*, which is not in writing. 4 Comyn's Dig. Estoppel 200, a. 3; Brown v. Wheeler, 17 Conn. 354; Shelton v. Alcox, 11 Conn. 240; Martin v. Ives, 17 S. & R. 364; Runlett v. Otis, 2 N. H. 167; Morris v. Rosser, 3 East 15; Jackson v. Desling, 2 Caine's C. 198; 15 John. 497; Jackson v. Gager, 5 Cowen 383; 12 Wend. 578; Jones v. Boston Mill Cor., 6 Pick. 148; Emans v. Turnbull, 2 John. 313; 1 Phillips' Ev. C. & H. Notes, 200 *et seq.*; Whiteside v. Jackson, 1 Wend. 418; Jackson v. Miller, 7 Cow. 747; Jackson v. Walker, 7 ib. 637; Jackson v. Smith, 7 ib. 717. These last four cases settle the law of estoppel between vendor and vendee.

RICE & MORGAN, *contra*:

1. To create an estoppel *in pais*, which shall preclude a party from alleging the truth, or deprive him of his legal title to land, it must appear: first, that he has made some declaration, or done some act, inconsistent with the truth, with a design to influence the conduct of another; second, that the party alleging the estoppel was ignorant of the truth, and relied and acted upon the faith of such acts or declarations; third, that an injury will result to him, if the other party shall be allowed to gainsay them—that is, the acts or declarations upon which the other party acted. Fraud and injury must concur, to create such an estoppel. Martin v. Angell, 7 Barb. Sup. Ct. Rep. 407; Hunley v. Hunley, 15 Ala. Rep. 92; Carter v. Darby, 15 ib. 696; Brewer v. Logan, 19 ib. 482; Shelton v. Carroll, 16 ib. 148; Morton v. Hodgdon, 32 Maine Rep. 127.

2. A party will not be estopped by a declaration made to a stranger, (that is, to one who, "so far as the question of estoppel is concerned," is a stranger,) where it does not appear that such declaration was ever communicated by him to the party setting up the estoppel, so as to influence his conduct. Pennell v. Hinman, 7 Barb. Sup. Ct. Rep. 644; 19 Ala. Rep.

482, *supra;* Whitaker v. Williams, 20 Conn. Rep. 98. Therefore, the direction of Britton to the sheriff, to levy on and sell the land, cannot estop Britton, especially as Stone never heard of this until after his purchase, and was not influenced by it.

3. Under our act of 1820, the equitable title or claim to land, cannot be sold under execution at law. And a purchaser at sheriff's sale acquires no right or interest whatever, where the title of the defendant in execution is merely equitable. The maxim, "*caveat emptor*," applies to such sales in its utmost rigor. There is no warranty in such sales. Perry v. Williams, Dudley's (S. C.) Rep. 44; Hughson v. Burr, 5 Strobhart's Law Rep. 147. This case last cited shows, that, although such purchaser acquires no title, and although the owner of the property sues him for it and recovers it, yet he cannot, in any mode, recover from the defendant in execution, whose debt he has paid, any part of the money which he paid under such sale. 5 Strob. Law Rep. 147, *supra;* Perry v. Williams, Dudley's (S. C.) Rep. 44.

4. It is not alleged or pretended by the bill, that the defendant, in any manner, or to any extent, directly induced or influenced Stone to make the purchase at sheriff's sale.

5. Upon the facts alleged in the bill, the court of law from which the execution issued, would not, on a direct motion, set aside the sheriff's sale, or vacate the satisfaction caused by the payment of the bid. Davis v. Hunt, 2 Bailey's Rep. 412; Dudley's Rep. 44, *supra.*

CHILTON, C. J.—This was a bill filed in the Chancery Court of Talladega county, by Joel L. Stone, Isaac Hudson and John W. Wood, perpetually to enjoin an action of ejectment instituted by the defendant, as the lessor of the fictitious plaintiff, to recover of said John W. Wood, tenant in possession, a tract of land known as the south-west quarter of section thirty, in township twenty-one, in range three, situate in said county.

The Chancellor dismissed the bill for want of equity, and the propriety of that decree is the question presented by the assignment of error. Do the allegations of the bill, conceding them to be true, make out a case for equitable relief? They

are substantially as follows: On the 6th day of February, 1841, David A. Griffin, then sheriff of Talladega county, having an unsatisfied execution in his hands, which had issued from the County Court of said county, in favor of Willis A. Faver, against the defendant, Burrell Britton, for the sum of $327 $\frac{85}{100}$, upon a judgment in said County Court, rendered at the January term thereof, 1841, applied to said Britton for property, so as to levy and make the money according to the exigencies of said writ. Britton directed said sheriff to levy on the above named land, saying that it was the property by a sale of which he desired the money to be made upon the execution. Griffin accordingly levied upon and sold the land, pursuant to the directions of Britton, and after giving the notice required by the statute; and the complainant Stone became the purchaser, at the price of $140, he being the highest bidder therefor, which land was purchased for himself and one H. P. Watson; and the sheriff's deed, which is an exhibit to the bill, was made in their joint names, but Watson's interest Stone subsequently purchased. At the sale, by the sheriff, which took place on the first Monday in June, 1841, one John Wood, by an agreement with Britton, bid for said land, as his (Britton's) agent, and run it up to the sum at which it was knocked off. After the sale, Wood remarked, that the title to said land was not good; whereupon said Stone went to Britton, before the return day of the execution under which the land was sold,—told him what Wood had said, and was answered by him that Wood's statement was not true, and that the title to said land was perfectly good. Britton, in a short time thereafter, gave Stone possession of the land, who sold and gave his bond for title to Miles H. Harrison, who sold and transferred said bond to Isaac Hudson, who leased to Wood, the complainant. The purchase money due upon the several sales had been paid, and the several purchasers, holding under the sheriff's deed, had held possession eight or nine years. It turns out that, at the time of the levy and sale of the land by the sheriff, Britton had only an equitable title to said land, a fact of which complainants were not apprised until after the purchase; and after having adopted and availed himself of the proceeds of the sale paid by Stone, Britton has perfected his title, and is now seeking to oust Wood, by

his ejectment suit, which it is the object of the bill to enjoin. Complainants are *bona fide* purchasers, for a valuable consideration, without any notice of the imperfection in the title.

The complainants insist that Britton is estopped, by his conduct, from setting up his after acquired title to invalidate Stone's purchase. The defendant, by his counsel, contends on the other hand: first, that to estop him, it must be shown that he did some act, or made some declaration, inconsistent with the truth, with the design to influence the conduct of another; and second, that such other party was influenced thereby to his prejudice. Other arguments are urged against the application of the doctrine of estoppel to the facts of this case, but they resolve themselves into the two above stated.

We may fully concede both the propositions contended for by the defendant's counsel, and even then the case made by the allegations of the bill is clearly against the defendant.

The statute forbids the sale of an equitable title to land, under an execution at law. The defendant in the execution, who must be presumed to know that such was the law, as well as to know whether his title was legal or equitable, directed the sheriff to levy upon and sell this land. But for such direction, we must intend that the sheriff would not have sold; for we cannot indulge the presumption that the sheriff would knowingly have attempted to sell, under an execution at law, what the statute says shall only be subjected by bill in equity. It results, that the sale is to be attributed to the direction given by Britton to the sheriff, who pointed out the land, and caused the levy and sale, and has thus obtained the benefit of the proceeds, which have gone toward the satisfaction of an execution against him. After having thus acted, does it lie in Britton's mouth to say, "True, I caused the land to be sold, with the declared view of raising money to pay my debt, and it has been sold according to my direction, and the proceeds have been applied as contemplated by me; but I had no legal title, and I will, therefore, hold on to what I have obtained, and will deprive the purchaser of the land?" It is manifest, at first blush, that this would be a palpable fraud; nor is it less a fraud, that he avails himself of the sheriff's agency and an execution to perpetrate it. The fraud and injury inflicted on the purchaser is not the less subject to judicial animadversion, because it was effected by indirection and circuity.

Mr. Greenleaf, in speaking of estoppel, says: "There are two classes of admissions which fall under this head of conclusive presumptions of law, namely: solemn admissions, which have been solemnly made in judicial proceedings, &c.; and unsolemn admissions, which have been acted upon, or have been made to influence the conduct of others, or to derive some advantage to the party, and which cannot afterwards be denied, without a breach of good faith." The latter class, he adds, "comprehend, not only all those declarations, but also that line of conduct, by which the party has induced others to act, or has acquired any advantage to himself." 1 Greenl. Ev. §§ 27, 184, 195, 196, 207 and 208.

But whether the admissions or declarations be true or false, were express or implied merely, or whether made with intent to defraud, is not the question in such cases. The true inquiry is, has the party, by them, or by his line of conduct, procured another to act, by which he has obtained advantage? and will the affirmance of the untruth of such declaration, or the disaffirmance of the necessary or proximate consequences resulting from such line of conduct, work injustice to the opposite party? In such case, the party should be estopped.

In the case before us, Britton not only superinduces the sale, by his direction given to the sheriff, to levy upon and sell the land, but, after the sale was made, he ratifies and confirms it, and surrenders the possession of the land sold to the purchaser, who is thereby enabled to sell to others, who in turn take possession and make payment for it. To allow him now to say he had only an equitable title, which the sheriff could not sell, would, we repeat, be to permit him to practice a fraud upon the purchaser. Every principle of public policy and sound morality forbids that he should procure a sale to be made for his own benefit; that he should stimulate the purchaser to bid by bidding himself, through his agent; avail himself of the proceeds; then ratify and confirm it, and afterwards repudiate it. The authorities are full to the point, that the estoppel should be an effectual bar to Britton, against setting up his legal title. 2 B. Monroe 254; 16 Ala. Rep. 715, and the cases cited on the brief of complainants' counsel.

Let the decree be reversed, and the cause remanded, at the cost of the defendant in error.