# CASES

IN

# THE SUPREME COURT

## OF ALABAMA.

### JUNE TERM, 1873.

## Diggs *v.* The State.

*Indictment against County Solicitor for Accepting Bribe.*

1. *Description of defendant's name in indictment; plea in abatement of misnomer; striking out plea as frivolous.* — Where the defendant's name is so stated in the indictment that, *primâ facie*, a plea in abatement for a misnomer will lie; as *e. g.* where his name is averred to be " *J. Shepphered Diggs ;* " a plea in abatement, in proper form, and regularly filed, averring that his true name is " *James Shepard Diggs,*" and that he has always been known and called by that name, should not be stricken out, on motion, as frivolous.

2. *Sufficiency of common law indictment; use of figures instead of letters, in statement of time.* — As a general rule, an indictment which would be good at common law is good under our statutes ; and the use of figures instead of letters, in stating the time when the offence was committed, is not objectionable, since the statute (Rev. Code, § 4115) dispenses with the necessity of any statement of the time.

3. *Presumption of injury from admission of irrelevant evidence.* — The admission of irrelevant evidence is an error which will work a reversal of the judgment, unless the record clearly shows that no injury could possibly have resulted.

4. *Variance in description of draft, or money order.* — Where the indictment (under Rev. Code, § 3564) described the bribe alleged to have been received by the defendant as a draft " for two hundred and ninety-eight $\frac{98}{100}$ dollars, dated May, 1870 ; " and the draft offered in evidence was for two hundred and ninety-eight dollars, and dated May 14, 1870, — *held*, that there was no substantial variance.

5. *Charge tending to mislead jury.* — A charge to the jury, which asserts that " it is the province of the jury to discard and treat for nought any part of the evidence," though tending to mislead the jury, by inducing them to suppose that they might reject any part of the evidence capriciously or arbitrarily, is not a reversible error ; the defendant should ask an explanatory charge.

6. *County solicitor indictable as " ministerial officer " for receiving bribe.* — A county solicitor is a " ministerial officer," within the meaning of the statute (Rev. Code, § 3564) fixing the punishment for the acceptance of a bribe by " any ministerial officer of any court."

7. *Officer de facto; how constituted, and criminal responsibility of.* — An order of the Circuit Court, made by the presiding judge on the last day of the term, by which a person named therein is appointed " to act as solicitor *pro tem.* of this court

until further orders," and the acceptance of the appointment by the person named, constitute him the county solicitor *de facto*, so long as he acts under the appointment, although there was no vacancy in the office of county solicitor at the time the order was made; and as such officer *de facto*, he is indictable for malfeasance in office, as if he were an officer *de jure*. (PETERS, C. J., dissenting; held the order void.)

8. *Charge misleading jury.* — A charge asked, which tends to mislead the jury, is properly refused.

APPEAL from the Criminal Court of Dallas.

Tried before the Hon. GEO. H. CRAIG.

The indictment in this case was in the following words : —

" The grand jury of said county charge that, before the finding of this indictment, one J. Sheppherd Diggs was the solicitor of Dallas County, duly appointed and qualified to perform all the duties of said office, and duly assigned to attend before the grand jury of said county, to examine witnesses brought before such grand jury, and to give to such grand jury legal advice as to any matter or matters connected with their duties, and to give to such grand jury information as to any matters cognizable by them, as well as to prosecute the pleas of the State in the courts of said county. And the grand jury of said county do further charge, that on the —— day of May, 1870, the said J. Sheppherd Diggs, while then and there acting as solicitor as aforesaid in said county, did corruptly receive, or agree to receive, intending and contriving to corrupt the due course of law and justice, from one Samuel M. Hill, Jr., a gift, or gratuity, to wit, a draft, or order for money, drawn by said S. M. Hill, Jr., for the sum of two hundred and ninety-eight $\frac{98}{100}$ dollars, on L. Brewer & Co., a commission firm, doing business in the city of Mobile, State of Alabama, dated May, 1870, and payable ten days after the date thereof to the order of said J. S. Diggs, of the value of two hundred and ninety-eight $\frac{98}{100}$ dollars, as a gift, or gratuity, bribe, and pecuniary reward, to prevent or to cease, or to advise against, or not to begin a prosecution against the said S. M. Hill, for the criminal offence of living in said county, openly and notoriously, in a state of fornication or adultery, with a woman named Margaret Evans, or to influence, or induce, or advise the said grand jury, not to consider or act upon the said criminal conduct of the said Samuel M. Hill, Jr., of which said Diggs as aforesaid was well informed, or not to appear before the said grand jury, and give information of such violation of the law by the said Hill ; and that the said J. Sheppherd Diggs did thereby, as solicitor as aforesaid, wilfully and corruptly prostitute, violate, and betray, for the gift, or gratuity, bribe, or pecuniary reward aforesaid, so as aforesaid by him, in his said office, taken and reived, the duties of his said office, and the trust and confidence in him reposed ; against the peace and dignity," &c.

[Diggs *v.* State.]

" 2. And the grand jury of said county further charge, that on the —— day of ——, 1870, in the county aforesaid, one J. Sheppherd Diggs was the solicitor of Dallas County, duly and legally appointed, and acting and qualified to perform and discharge the duties of that office, the same being an office of importance and trust, concerning the administration of justice within the State; and the said J. Sheppherd Diggs, being then and there such solicitor as aforesaid, contriving and intending the duties of his said office, and the trust and confidence thereby reposed in him, to prostitute and betray, did then and there, unlawfully and corruptly, accept and receive of one Samuel M. Hill, Jr., a draft, or order, for the sum of two hundred and ninety-eight $\frac{}{100}$ dollars, drawn by said S. M. Hill, Jr., on L. Brewer & Co., the commission merchants of said Hill in Mobile, in said State, dated May, 1870, and payable ten days after the date thereof, for the sum of two hundred and ninety-eight $\frac{}{100}$ dollars, of the value of two hundred and ninety-eight $\frac{}{100}$ dollars, payable to the order of said J. Sheppherd Diggs, and as solicitor as aforesaid, as a gift, gratuity, bribe, and pecuniary reward, to influence or induce him, the said J. Sheppherd Diggs, to prevent, or not to begin, or not to give information as solicitor of the said county as aforesaid, that would lead to the prosecution of said Hill, for then and there, as was well known to the said J. Sheppherd Diggs, living in a state of adultery or fornication with a woman named Margaret Evans; and that he, the said J. Sheppherd Diggs, did thereby unlawfully, wilfully, and corruptly prostitute, violate, and betry, for the aforesaid bribe, gift, gratuity, or pecuniary reward, so as aforesaid by him, the said J. Sheppherd Diggs, in his said office taken, the duties of his office and the trust and confidence in him therein and thereby reposed, and did thereby, wilfully and corruptly agree to cloak, or screen, or protect a person, well known to him, the said J. Sheppherd Diggs, to be in the open, notorious, and continuous commission of an offence against the laws of the State; against the peace and dignity," &c.

" 3. The grand jury of said county do further charge, that on or about the —— day of May, 1870, Samuel M. Hill, Jr., at that time being a resident citizen of the said county, was, and had been for many months previous, to wit, for six months, living in a state of adultery or fornication, in said county, with a woman named Margaret Evans; and that such living and violation of the laws was well known to one J. Sheppherd Diggs, hereinafter mentioned, and was amenable to, and deserving of the punishment of the laws of the State of Alabama, in such cases made and provided. And the grand jury further charge, that on the —— day of May, 1870, the said

J. Sheppherd Diggs, an attorney-at-law, in the county afore-
said, was, by due appointment, solicitor in the county afore-
said, and for the County of Dallas as aforesaid, duly and legally
qualified to discharge and perform all the duties of that office,
the same being an office of importance and trust concerning the
administration of justice in the county aforesaid ; and the said
J. Shepmpherd Diggs, being then and there such solicitor for
Dallas County, intending and contriving the duties of said
office, and the trust and confidence thereby reposed in him, to
prostitute and betray, did then and there unlawfully and cor-
ruptly accept and receive of the said S. M. Hill, Jr., a draft,
or order, on L. Brewer & Co., commission merchants in Mobile,
Alabama, for the sum of two hundred and ninety-eight $\frac{}{100}$
dollars, dated May ——, 1870, and payable ten days after the
date thereof, to the order of the said J. S. Diggs, and signed
by the said S. M. Hill, of the value of two hundred and ninety-
eight dollars, as a gift, or gratuity, bribe, and pecuniary re-
ward, to influence him, the said J. S. Diggs, as solicitor as
aforesaid, not to prosecute the said Hill before the grand jury
of said county, for his said offence of adultery or fornication, or
not to give information before said grand jury, that would lead
to a finding by said grand jury of a true bill against the said
S. M. Hill for such offence, or to otherwise prevent such find-
ing by such grand jury, or otherwise to protect said Hill against
an indictment being found or prosecuted against the said Hill,
for his said violation of the law ; and that he, the said J.
Shepmpherd Diggs, did thereby unlawfully, wilfully, and cor-
ruptly prostitute, violate, and betray, for the aforesaid gift,
gratuity, bribe, or pecuniary reward, so as aforesaid by him,
the said J. Sheppherd Diggs, in his said office taken and ac-
cepted, the duties of his said office, and the trust and confi-
dence in him therein and thereby reposed ; against the peace
and dignity," &c.

The judgment entry recites, that the defendant, when ar-
raigned, pleaded not guilty ; but the bill of exceptions states
that on the trial, when the parties had announced themselves
ready, the acting solicitor " moved the court to strike from the
files the defendant's plea of misnomer, on the ground that it
was frivolous." The plea, as set out in the bill of exceptions,
was in these words : " *James Shepard Diggs*, indicted by the
name of *J. Sheppard Diggs*, in his own proper person cometh
into court here, and, having heard the said indictment read,
saith that his name is, and always hath been from his nativity,
*James Shepard Diggs*, and by that name he hath always been
called and known ; without this, that he, the said *James Shep-
ard Diggs*, now is, or at any time hitherto hath been, called or
known by the name of *J. Sheppard Diggs*, as by said indict-

ment is supposed ; and this he, the said *James Shepard Diggs*, is ready to verify. Wherefore he prays judgment of the said indictment, and that the same may be quashed." The court sustained the motion, and struck said plea from the files, as frivolous ; to which the defendant excepted.

" Thereupon," as the bill of exceptions then states, " the defendant interposed a demurrer to said indictment, and to each count thereof, on these grounds : 1st. That no offence is charged in or by the said indictment, nor in either count thereof. 2d. That the act or acts set forth in said indictment, or in either of the counts thereof, do not constitute bribery in the defendant. 3d. That Hill is not described, by name or otherwise, as a man, in any part of said indictment, or in any count thereof. 4th. That the date, as to the time when the said offence is alleged to have been committed, is set out in figures, instead of words or *names*. 5th. That the first count charges, if anything, two offences; one for receiving, and the other for agreeing to bribe the grand jury. 6th. That it does not appear therein, from the date alleged, that the offence was not barred by the Statute of Limitations when the indictment was preferred. 7th. That the second count fails to inform the defendant whom he is charged with knowing lived in adultery or fornication ; and also that the words ' then and there ' vitiate this count, because they may refer to the words therein, ' that on the —— day of ——, 1870, in the county aforesaid,' or to the words therein, ' in Mobile, in said State, dated May, 1870, and payable ten days after date.' 8th. That the third count is bad, because it charges the defendant with agreeing not to prosecute Hill, and also with compromising or compounding the offence, by agreeing not to give information to the grand jury of knowledge in his possession. The court overruled said several demurrers, to which said defendant excepted. Thereupon the jury was empanelled, and the State introduced as evidence the following orders of the Circuit Court of Dallas County," &c.

The orders referred to, the last one of which was signed by Hon. M. J. Saffold, judge of the first judicial district, were in these words : " September 9, 1869. On application of the grand jury, it is ordered by the court that E. W. Pectus be appointed special solicitor, to advise the grand jury in all cases in which the solicitor of the county is incompetent or disqualified." " September 11, 1869. Ordered, S. W. John is hereby appointed solicitor *pro tem.* of the County of Dallas ; the solicitor, Jasper N. Haney, having absented himself from the discharge of his official duties." " October 2, A. D. 1869. Ordered, That S. W. John continue to act as the solicitor for the Circuit Court, until further ordered." " April 1st, 1870. Ordered, J. S. Diggs, Esq., act as solicitor *pro tem.* of this court,

until further orders." "At Chambers, October 17th, 1870. Ordered, That the order heretofore made, appointing Sheppard S. Diggs solicitor *pro tem.* of this court until further orders, be hereby revoked, and that S. W. John be appointed solicitor *pro tem.* until further order." The State introduced one John Silsby as a witness, who was the clerk of the Circuit Court of Dallas County in 1869 and 1870, and who testified "that the said order, dated April 1st, 1870, was so made and entered on the minutes of said court after the business was disposed of, and after said court had adjourned, and simultaneously with the signing of the minutes by said presiding judge ; that said court remained adjourned from said first day of April, 1870, until the next regular term thereof in November, there being no term of said court, either general or special, in the interval ; also, that he, witness, only knew said Jasper N. Haney as the solicitor of said county at the time of said appointment of S. W. John ; that said Haney, after the appointment of said John, asserted his right to act and perform the duties as such solicitor, but was not permitted to do so by the said judge of the Circuit Court."

The State introduced evidence tending to show that in May, 1870, said S. M. Hill and Margaret Evans were living together in a state of adultery or fornication ; that the defendant, about that time, had in his possession a draft for $298, drawn by said Hill on L. Brewer & Co., payable to said defendant, on which he endeavored to obtain a loan or advance of money, and which he said was given to him by said Hill ; "that he had charged him that much for keeping his case for living in adultery or fornication with Margaret Evans from going before the grand jury." "The solicitor *pro tem.* then testified, against the objection of the defendant to each and every part thereof, that he acted as solicitor at the time the grand jury investigated this charge against the defendant ; that he telegraphed, at the request of the grand jury, to L. Brewer & Co., at Mobile, for the draft hereinafter mentioned, and received a letter in reply by mail ; that said letter was in the handwriting of Col. Harris, the junior member of said firm, and that said letter had been lost or mislaid from his bag of state papers. Defendant's said several objections to the foregoing statement of said witness, and to each sentence and part thereof, were overruled by the court, and said statements were allowed to go to the jury as evidence ; to which the defendant excepted. Thereupon, against the objection of the defendant, because the same was variant in date, amount, and in the name thereto, from the draft described in the indictment, the court permitted the State to introduce the said draft in evidence." The draft was dated "Selma, May 14, 1870 ; " was signed "S. M. Hill, Jr.," in-

[Diggs v. State.]

dorsed " J. S. Diggs," addressed to L. Brewer & Co., Mobile, and in the words and figures following : "$298 $\frac{00}{00}$. Ten days after date, pay to the order of J. S. Diggs the sum of two hundred and ninety-eight dollars, and charge same to my account." To the introduction of said draft the defendant excepted. The court then allowed the solicitor, as a witness, to explain to the jury, that n drawing a draft or bill he always used the particular fractional form shown in the indictment, to express the want of cents in the amount ; and to this evidence, also, the defendant reserved an exception.

The court charged the jury as follows : " The defendant is on trial, charged with the offence of bribery. The statute, under which the indictment is framed, is as follows," setting out section 3564 of the Revised Code. "If the State has proved to your satisfaction, beyond a reasonable doubt, that at the Spring Term, 1870, of the Circuit Court of Dallas County, the defendant was appointed solicitor of said court, by the order thereof, and took upon himself the duties of said office, and so acted until said order was revoked ; and that Samuel M. Hill, Jr., a man, and Margaret Evans, a woman, were living in a state of adultery or fornication, in Dallas County, before said order was revoked ; and that the defendant knew it, and, acting as such solicitor, under and by virtue of said order, he corruptly received from said Hill the draft mentioned in the indictment, and received said draft under an agreement, understanding, or promise, express or implied, that he would not report, or prosecute as solicitor, said S. M. Hill for said offence, before the grand jury of said county ; and that said draft was of value ; and that these acts occurred in said County of Dallas, within three years before the finding of the indictment in this case, — then the defendant is guilty. The jury must give the defendant the benefit of any reasonable doubt which they may have relative to any one of the points mentioned ; and if there is such reasonable doubt, they must acquit the defendant. It is the duty of the jury to weigh carefully every part and portion of the evidence in the case, and give to it such consideration as, in their judgment, it justly merits ; and it is their province to discard and treat for nought any part of the same. No jury should be influenced, in this or any other case, by prejudices of any character ; for the law presumes every man innocent until his guilt is established beyond any reasonable doubt whatever."

The defendant excepted to this charge, and to each part thereof, and then requested, in writing, the following charges : 1. " If the jury believe, from the evidence, that the defendant alone was appointed the solicitor of the Circuit Court of Dallas County, under the order of Hon. M. J. Saffold, on the last day

of the Spring Term of said court, 1870 ; and that he, neither then nor afterwards, did any act or duty in or under said appointment, he was not, in contemplation of law, the solicitor of said county, and should be acquitted." 2. " If the jury believe, from the evidence, that Jasper N. Haney was the regular solicitor for Dallas County in 1869, the constitutional term of office continued until November, 1872 ; and that both he and another could not hold said office *generally*, (?) and as solicitors discharge all its duties at the same time." The court refused these charges, and the defendant excepted to their refusal.

BRICKELL, J. — A defendant must be indicted by his true name, or by the name by which he is generally known and called. If neither of these was known, at common law he was indictable as a person whose name was unknown to the grand jury, accompanied with some averment of fact identifying him. The statute now changes this rule of the common law, so far as the averment of a fact identifying the accused was necessary. R. C. § 4113. The identity of the person charged, and of the person arraigned to answer, is the requisition and object of the laws. Hence it follows, the accused, when his name is not unknown, is not identified, unless his real name, or that by which he is generally known and called, is used. The insertion or omission of a middle name, or of the initial thereof, is immaterial. *Edmundson* v. *State*, 17 Ala. 179. If a person is in the habit of using initials for his Christian name, and is indicted by these initials, the fact whether he is so known may be put in issue ; and if the issue is proved against him, he may properly be convicted. *City Council* v. *King*, 4 McCord, 487.

In this case, if the appellant used his name as " J. Sheppherd Diggs," so that thereby he was generally known and called, this is proper matter of replication to the plea ; and he would, if it is true, be bound to answer the indictment. The plea on its face is good, and, if interposed before the plea of not guilty, should not have been stricken out as frivolous. A plea not subject to demurrer, and interposed in the regular order of pleading, should never be stricken out on motion ; and it is generally the better practice to put the party on his demurrer. *Johnson* v. *McLaughlin*, 9 Ala. 551. An indictment against a defendant by the initial of his Christian name, or by his middle name only, or by the initial of his first and his middle name, is, *primâ facie*, subject to a plea in abatement. If the indictment, in that form, uses the name of the defendant as it is generally known and called, that must be replied to the plea. We are not sure that the record affirmatively shows this plea to have been filed before the plea of not guilty was inter-

[Diggs *v.* State.]

posed, and that we could reverse because of the action of the court in striking it out. As the judgment must be reversed on other grounds, it is not necessary to determine that question.

2. The demurrer to the indictment was properly overruled. It is drawn to a greater length than is usual, or than is necessary under our present statutes. It conforms to approved precedents at common law, and avers every ingredient of the offence imputed to the accused. He could not mistake the offence charged; and, on conviction, no court could doubt the judgment to be rendered. As a general rule, we think it may safely be asserted, that an indictment good at common law is good under our statutes. That the time of committing the offence is expressed in figures, not in letters, if objectionable at common law, under the authority of *State* v. *Raiford* (7 Porter, 102), is not an objection merely, because the statute dispenses with a statement of the time when the offence was committed. *Molett* v. *State*, 33 Ala. 408.

3. The State was permitted, against the objection of defendant, to prove by the solicitor *pro tem.* that he acted as solicitor at the time the grand jury investigated the charge against the appellant; that, at the request of the grand jury, he telegraphed to L. Brewer & Co. for the draft drawn on them by Hill, and charged to have been given to defendant as a bribe; that he received a letter in reference to said draft, which was in the handwriting of a member of the firm of Brewer & Co., and that this letter had been lost or mislaid. For what purpose this evidence was admitted, we are not informed by the bill of exceptions, nor can we see its relevancy to the issue to be tried. The only question before the jury was, whether the defendant had corruptly received, or agreed to receive the draft, while in the official position of county solicitor. The corrupt reception, or the corrupt agreement to receive, consummated the offence, though the draft was never paid. In no aspect of the case presented by the record was it necessary for the State to show how the solicitor obtained possession of the draft. If the evidence was designed to aid in identifying the draft, or to prove its payment, the correspondence between the solicitor and the drawers was not admissible. As the evidence is now presented, it was irrelevant, and should not have been received. Its admission may not have prejudiced the appellant, and we do not see that it was capable of working any special injury to him; but we cannot see clearly that it did not. The rule often announced by this court is, that the admission of irrelevant testimony will reverse, unless the record clearly shows that no injury would have resulted. It is not enough that we cannot discover injury; we must see clearly that none could have resulted. *Frierson* v. *Frierson*, 21 Ala. 549; *Pool* v. *Devers*, 30 Ala. 672; *Mayer* v. *Clark*, 40 Ala. 259.

4. There was not a substantial variance between the draft offered in evidence and the draft described in the indictment. The indictment does not purport, and it is not necessary in this case it should, to set out the draft according to its tenor or precise recital. 1 Bish. Cr. Pr. § 554. The variance is supposed to arise from the fact, that in the indictment the draft is described as for " two hundred 'and ninety-eight $\frac{}{100}$ dollars," and is dated " May, 1870 ; " while the draft offered in evidence is for two hundred and ninety-eight dollars, and is dated May 14, 1870. It would have been sufficient, in this case, to have averred in the indictment that the appellant received a draft, drawn by Hill on Brewer & Co., for the payment of money, without describing its date, amount, or time of payment. The character 'or amount of the thing received, or agreed to be received, so that it appears to have been of value, is not material ; the draft offered in evidence substantially conformed to the description in the indictment, and the objection of the appellant was probably overruled. The evidence of the solicitor was inadmissible and unnecessary ; and as the court should, without it, have overruled the objection, its admission is not a reversible error.

5. The charge given by the court is objected to as erroneous, because it asserts that it was the province of the jury " to discard and treat for naught any part of the evidence." Without explanation, this charge may have induced the jury to suppose that they had power, capriciously or arbitrarily, to reject any portion of the evidence. This is not the power or province of the jury. They cannot reject evidence, unless they regard it as unworthy of credit, because the witness has been successfully impeached ; or because he had been contradicted ; or because of its inconsistency in itself, or with other evidence in the cause ; or because the manner of the witness leads them to regard him as not worthy of belief ; or for some other substantial reason. The tendency of this charge may have been to mislead the jury. Such a charge is not, however, a reversible error. The party objecting should have asked an explanatory charge, and thus obviated or removed its tendency to mislead. *Abraham & Bro.* v. *Nunn,* 42 Ala. 51; *Scully* v. *State,* 39 Ala. 240.

6. It is next objected that the charge asserted a county solicitor is a ministerial officer, subject to indictment under section 3564 of the Revised Code. In this we are of the opinion there was no error. If a county solicitor is not a ministerial officer, it would be difficult, if not impossible, to define his character ; all the duties with which he is charged pertain to the protection of the State, and the general 'administration of the criminal laws. He attends on the grand jury, as their legal

adviser ; draws the indictments they may find ; prosecutes all indictable offences, and prosecutes or defends any civil action to which the State is a party, pending in the Circuit Court. R. C. § 856. No one of these duties involves executive or judicial functions. They are purely ministerial. In the charge given there is, therefore, in this respect, no reversible error.

7. This brings us to the material question this case presents. The defendant not being county solicitor *de jure*, is he indictable for malfeasance in office while displacing the solicitor *de jure ?* That there may be an officer *de facto*, while there is an officer *de jure ;* or, in other words, though an office is not vacant, and there is an existing officer *de jure*, one who enters into and assumes its duties, under color of appointment, will be an officer *de facto*, is a proposition maintained by all the authorities we have had an opportunity of consulting. In *Garner* v. *Clay* (1 Stew. 132), the acts of a sheriff *de facto* were deemed valid, although there was another person who had been elected to the office, and, of consequence, was entitled to it *de jure*. In *Flournoy* v. *Clements* (7 Ala. 535), the sheriff elect qualified, gave bond, and entered on the discharge of the duties of the office. Subsequently, the judge of the County Court, under a statute then of force, vesting him with jurisdiction, declared the office vacant, and it was filled by executive appointment. The judgment declaring the office vacant was reversed by this court. The judgment of reversal, of course, rendered the judgment of the County Court judge mere waste paper. It was converted into a nullity, and could not subsequently be regarded as having ever had a legal existence. The office was, therefore, never vacant ; yet this court held the person acting under executive appointment, while the judgment of vacancy was unreversed, a sheriff *de facto*. In *Thompson* v. *State* (21 Ala. 48), the Commissioners' Court, in the exercise of its statutory power, appointed an overseer of a public road. Subsequently, the judge of the County Court, who had power only to fill vacancies occurring after the Commissioners' Court had appointed, without a vacancy, appointed another person, who assumed to act. This court held that, although there was not a vacancy for the judge of the County Court to fill, and although there was an overseer *de jure*, the overseer so appointed must be regarded as an overseer *de facto*. In *Gregg* v. *Jennison* (55 Penn. 468), it is held, that an officer *de facto* is a person who is such by color of election, though ineligible, or though the office was not vacant. The same principle is asserted in Angell & Ames on Corporations, § 287.

It is unquestionably true that under the Constitution and laws of this State there can be in each county but one legal county solicitor, or but one legal county treasurer, or sheriff, or clerk

[Diggs v. State.]

of the Circuit Court, or judge of probate ; but to declare that there cannot be, as to each of these offices, an officer *de jure* and an officer *de facto*, would go very far towards declaring that there was not in law an officer *de facto*. The law deems it of high importance to have all offices filled by the persons legally and constitutionally entitled to hold them. It discourages and discountenances all intrusion into office, or usurpation of its authority. It affords the State, and the rightful claimant, every facility to oust an intruder or usurper. While the law is mindful of the importance of having the rightful officer in place and power, it deems it of more real, practical importance to be able to deal safely with those who are actually in place. On this principle, necessary to the safety of the citizens, to the keeping of governmental organization in motion, and to the just and speedy administration of the law, rests the whole doctrine of officers *de facto*. As was said by this court in *Heath* v. *State* (36 Ala. 273), the authorities may not be uniform in the definition of an officer *de facto*, " but they all concur in recognizing as such any person who exercises the duties of an office under color of an appointment or election to that office."

If the defendant was at any time solicitor of the County of Dallas, he was so by appointment. That appointment he derived from the judge of the Circuit Court of the first judicial circuit, of which Dallas forms a part. That judge only, under the Constitution, had the power of appointing to the office of solicitor. His appointment, though defeasible and invalid, is color of title. If the defendant accepted the appointment, and exercised the duties of the office, he was an officer *de facto*, though there may have been a solicitor *de jure* claiming the office. The law, so long as he kept in the line of his official duty, would have extended him the protection afforded the rightful officer. Official responsibility, civil and criminal, is but just compensation for this protection. When he is called to answer for malfeasance, he cannot be permitted to assail the validity of his appointment ; he is estopped from abnegating his official capacity. 1 Bish. Crim. Law, § 917.

In *Rex* v. *Berdett* (6 Car. & P. 124), a letter-carrier was indicted for embezzling an overcharge on a letter delivered to him. No evidence of his appointment as a letter-carrier was offered ; but one of the witnesses incidentally stated that he acted as such. The statute under which he was indicted prohibited and punished embezzlement by public officers. The court submitted the fact of embezzlement, and the question whether the prisoner had acted as letter-carrier, to the jury, declaring that if the two facts concurred, the prisoner was guilty ; and he was convicted. In *Allen* v. *McNiel*, 1 Mills

(S. C.), it is said, " When a person is sued for any act done by him in an official capacity, it does not lie in his mouth to say he is not the person he has held himself out to the world to be." In *State* v. *McEntyre* (3 Ired. 174), the court held : " A person who undertakes an office, and is in office, though he might not have been duly appointed, and therefore may have a defeasible title, or not have been compellable. to serve therein, is yet, from the possession of its authorities and the enjoyment of its emoluments, bound to perform all the duties, and liable for their omission, in the same manner as if the appointment were strictly legal and his right perfect." In *State* v. *Mayberry* (3 Strobh. 144), a constable was indicted for suffering a negligent escape, and was held liable, though not an officer *de jure;* and the court said, " It would be dangerous if he were permitted to evade liability by proving he is not an officer *de jure.*"

It is difficult for us to conceive of a more evil and dangerous proposition, than that one who intrudes into or usurps a public office, assumes its duties, and exercises its powers, can commit official crimes and shield himself from punishment by alleging that his crimes were only additions to his intrusion or usurpation. Admissions, on which another is induced to act, become conclusive on the party making them ; and it is immaterial whether they were made innocently or fraudulently. *McCrary* v. *Remsen*, 19 Ala. 430 ; *Harrison* v. *Pool*, 16 Ala. 167 ; *Stone* v. *Britton*, 22 Ala. 543. If this be true, what satisfactory reason can be given for not applying the same principle to one who deliberately assumes and exercises the duties and powers of a public office ? He holds himself out to the world as an officer ; he becomes entitled to protection as such ; he can exercise the duties, and take the emoluments, until he is ousted ; and he must be amenable, as if he was the rightful officer. In the charge given by the court there was, therefore, no error.

8. Nor did the court err in refusing to charge that, if Haney was the rightful solicitor, both he and the defendant could not hold the office generally, and discharge all the duties of office at the same time. This charge was calculated to mislead the jury, and to divert their attention from the real issue to be tried. Haney's right to the office is not involved in this case. That right may be fully conceded. So far as the office is an element of the crime imputed to the defendant, the inquiry, and the only inquiry, is, did the judge of the Circuit Court make the appointment set out in this record ? did the defendant accept that appointment, and act under it ? If he did, without regard to who was the rightful solicitor, he is liable to this indictment.

9. In refusing to charge that if the defendant did not act under the appointment he should be acquitted, the court erred.

[Diggs v. State.] ·

Acceptance of the appointment was necessary to fix official character on the defendant. This acceptance may be proved by the acts of defendant, and by his claiming to hold the office. But, without evidence of acceptance, he should not be convicted. That is as essential to his official capacity as an appointment.

For the error we have noticed, the judgment is reversed and the cause remanded. The defendant will remain in custody until discharged by due course of law.

B. F. SAFFOLD, J. — I concur in the opinion of Justice Brickell, and, as a supplement to it, I read the following expression of my views on points not directly treated of by him.

The indictment charged the defendant, under R. C. § 3564, in three counts, with accepting a bribe as solicitor of Dallas County. On the trial he denied his character as such solicitor, basing the denial on the fact that another was, at the time the offence was alleged to have been committed, the duly elected and qualified incumbent, and two persons could not hold the said office and perform the duties thereof at the same time. The state Constitution created the solicitor's office; and it requires that he shall be elected in each county by the electors thereof, and shall perform such duties as may be required of him by law. He shall hold office for a term of four years; and in case of vacancy, such vacancy shall be filled by the judge of the circuit, until his successor is elected and qualified. The legislature has not prescribed the duties of this officer. All of the statutes in the Revised Code relate to the circuit solicitor then in existence. Many of them are inapplicable to the present county solicitor; and such of them as have been applied to him in practice and usage have been so applied on account of their fitness to the acquired meaning of the term "solicitor," as a political officer of the State, rather than from any presumed or construed regulation of his duties by the legislature.

Section 859 of the Revised Code, in authorizing the presiding judge, when the solicitor is absent, or it would be improper for him to act, to appoint a competent attorney in his place, only recognizes, or declares, what is the inherent right of the court. The court, as the guardian of justice, is the representative of all suitors, and, in criminal cases, it can suffer neither the State nor the accused to be undefended. As this section (859) was not adopted in direct application to the county solicitor, and is a part of the regulation of a distinct officer, it cannot have the effect to limit or vary the power which the court has inherently to supply the place of the county solicitor who for any cause is not acting. As the Constitution bestows the

[Diggs *v.* State.]

power of appointment, in case of a vacancy, on the judge of
the circuit, and it is the duty of that judge to see to the proper
enforcement of the criminal law, both in term time and in va-
cation, except when he is displaced in term time by a *presiding*
judge, an appointment of solicitor made by him at any time
cannot technically be said to be void.   The duties of solicitor
are not confined in performance to the terms of the court; for
instance, he must issue subpœnas in vacation to witnesses to ap-
pear before the grand jury.   When he is not acting, unless the
judge of the circuit can supply his place, no other is authorized
to do so, and there must be a failure of justice.   The conclu-
sion is, that the judge of the circuit, from his power to ap-
point to a vacancy, and his duty as a conservator of the peace,
must be authorized to supply any lapse in the service of the
solicitor; and that, having jurisdiction of the subject matter,
no appointment he may make is *ipso facto* void, however irreg-
ular and subject to be set aside.   If, then, the party appointed
accepts the position, and performs the duties of the office, and
while in the exercise of the rights, privileges, and responsibili-
ties thereof, commits, as such officer, what the law denominates
crime, he cannot defend on the ground that he was not solicitor
*de jure.*

As to whether the defendant was appointed to the office
charged in the indictment to have been held by him, the tran-
script shows the following: "April 1st, 1870.   Ordered, J. S.
Diggs, Esq., act as solicitor *pro tem.* of this court, until further
ordered."   "At Chambers, October 17th, 1870.   Ordered, That
the order heretofore made appointing Sheppard S. Diggs so-
licitor *pro tem.* of this court until further ordered, be hereby
revoked, and that S. W. John be appointed solicitor *pro tem.*
until further order."   Whether the appointment thus made
ought to be construed as filling entirely the office of county
solicitor temporarily or not, it authorized the appointee to act
as such in matters pertaining to the Circuit Court, and was
color of title for as much more as he assumed to do.   There-
fore, proof of such an appointment, and of acceptance and ser-
vice under it by the defendant, would constitute him a *de facto*
county solicitor, and subject to prosecution for malfeasance.

That a *de facto* officer is subject to all the pains and pen-
alties of a *de jure* officer is abundantly shown by the following
authorities: 1 Bish. Crim. Law, § 917; 2 Bish. Crim. Law,
§ 378; 1 Gab. Crim. Law, 783; *The State* v. *McEntyre,* 3
Ired. 171, 174; *The State* v. *Sellers,* 7 Rich. 368, 372; *People*
v. *Cook,* 4 Seld. 67; *Rex* v. *Borrett,* 6 Car. & P. 124; 3 Haw-
kins Pl. C. 261, § 28.

PETERS, C. J. — I concur in the judgment of reversal in this

case, and the argument of the majority of the court, except upon what may be considered the question of chief importance in this prosecution. That is this : Was the accused a " solicitor in the County of Dallas," or a " municipal officer of court," on the day he received the bill of exchange, or draft, from Hill, in May, 1870, which constitutes the offence for which he is indicted ? If he was not, then this necessarily puts an end to this prosecution, so far at least as it may rest upon a criminal charge under our statute.

The law denouncing bribery as a crime is in these words : " Any ministerial officer of any court, or any person summoned as a juror, or appointed an auditor, arbitrator, umpire, or referee, who corruptly takes, or agrees to take, anything, to give his verdict, award, or report, or corruptly receives, or agrees to receive, any gift or gratuity whatever, must, on conviction, be imprisoned in the penitentiary, or sentenced to hard labor for the county, for not less than two, nor more than five years." Rev. Code, § 3564.

It will be seen that this section of the Code designates six classes of persons, filling certain offices, who are forbidden to take or receive, or to agree to take or to receive, a bribe. That is to say : 1, a ministerial officer of court ; 2, a juror ; 3, an auditor ; 4, an arbitrator ; 5, an umpire ; 6, a referee. That these persons are so singled out and defined is an indication of the legislative intention that no other persons are intended to be included in the enumeration. Penal statutes are to be strictly construed ; and where there is doubt as to the person intended, the party accused is entitled to the benefit of such doubt. *Chase* v. *N. Y. Cent. R. R. Co.* 26 N. Y. Rep. 523 ; Dwarris on Stats. pp. 245, 246, Potter's ed. 1871. No doubt a solicitor in the county is an officer of court, who falls under the penalties of the above-quoted law. But was the accused such officer, at the time he is charged to have committed the act which is charged against him as a crime ?

A solicitor in a county is a constitutional officer. The Constitution directs how that officer shall be elected or appointed to office. The words of the constitutional command are these : " A solicitor shall be elected in each county in this State, by the qualified electors of each county, who shall reside in the county for which he is elected, and perform such duties as may be required of him by law. He shall hold his office for a term of four years, and, in case of a vacancy, such vacancy shall be filled by the judge of the Circuit Court, until his successor is elected and qualified." Const. of Ala. 1867, Art. VI. § 17. The solicitor thus elected or appointed must be commissioned by the governor. Rev. Code, § 148. The Constitution having assumed to regulate the appointment of this officer, can

[Diggs *v.* State.]

he be appointed in any other way? I think not. Upon the clear and often asserted principle, that the thing expressed excludes the thing omitted, there can be no solicitor in the county, unless he is elected by the people, or appointed by the judge of the circuit, in the mode above directed. *Expressum facit cessare tacitum.* Smith Constr. of Stats. § 390, 2d ed.; Dwarris on Stats. p. 221, Potter's ed. 1871. This salutary rule ties up the hands of the court, and forbids judicial legislation, which is equally obnoxious to sound principle and to the Constitution itself. Const. of Ala. 1867, Art. III. § 1; Dwarris on Stats. p. 215, Potter's ed. 1871.

The evidence shows that there was no vacancy in the office of solicitor in the County of Dallas at the time of the appointment of Diggs; and the order of the court shows that the appointment was not made to fill a vacancy. It is expressed in these words: "April 1, 1870. Ordered, J. S. Diggs, Esq., act as solicitor *pro tem.* of this court, until further orders." Under the Constitution, the appointment, if to fill a vacancy, continues "until his successor is elected and qualified." Const. of Ala. *supra.* This is all the appointment the judge of the circuit can make to the office of "solicitor in the county;" and this can only be made to fill "a vacancy." If there is no vacancy, the judge acts without jurisdiction, and in violation of the Constitution; and his act is wholly void, and a nullity. 21 How. 506; 22 Barb. N. Y. 271; 13 Ill. 432. A court, or judge, acting under special powers, has only the jurisdiction expressly delegated; and the facts must show that the right of jurisdiction exists. *Collier's Adm'r* v. *Windham,* 27 Ala. 291; *Pearson & Wife* v. *Darrington,* 32 Ala. 227. In this case the proof shows that Haney was still the rightful solicitor in the county, and as such he claimed the office and its fees. Diggs, then, could not be solicitor. Any attempt to intrude him into that office was a clear usurpation, wholly unwarranted by law. Such a tenure of office does not create him a solicitor *de facto.* He does not hold under any color of right whatever, but wholly in defiance of law and right, and also of the public policy, embodied in the Constitution of the State. Const. of Ala. 1867, Art. VI. § 17, *supra.* The charge of the court objected to was, therefore, erroneous.

The Code authorizes the "presiding judge," in certain cases, to appoint a competent attorney to act in the place of the solicitor. This authority is given in these words: "The presiding judge, when the solicitor is absent, or when he is connected with the party against whom it is his duty to appear by consanguinity or affinity within the fourth degree, must appoint a competent attorney to act in his place." Rev. Code, § 859. This is not a power to make a solicitor, but to appoint "an

attorney " to act in his place *pro hac vice.* This appointment is not made by the judge of the circuit, but may be made by any " presiding judge " of any court, when an attorney for the purposes above named is needed ; and the appointment ends with the termination of the term of the court 'for which the appointment was made, or with the final disposition of the case or cases that required it to be made. This temporary appointment may be made as often as the exigencies require it ; and it must be made by " the presiding judge," whether he may be the judge of the Circuit Court, or of the Criminal Court. The power under this section of the Code is given only to the presiding judge ; and it may as well be exercised by the judge of a city or criminal court, as by a circuit judge. Under this act, each court may have its own attorney to act in the place of the solicitor; but he cannot, as such, claim the office of solicitor in the county. Such attorney, if he accepts the appointment, is a ministerial officer of the court in which he is appointed to act ; and, as such, he is punishable for the offence of bribery. Beyond this, the solicitor, duly elected or appointed, and commissioned by the governor, is the only solicitor known to the Constitution of the State, and the laws of the State having constitutional validity. The Constitution is a limit on the Code. The act adopting the Code excepts out of the legalization of that body of laws " such as conflict with the Constitution and laws of the United States, or the Constitution of this State." Acts of Ala. p. 7, " *An act to continue in force certain laws.*"

The attorney appointed by the presiding judge, under the above quoted section of the Code, is not a *de facto* officer of court, but he is an officer *de jure.* And, with the highest respect and consideration for the opinion and legal learning of the majority of the court, I think there is not the slightest necessity for resorting to the doctrine of officers *de facto* in this case. Under the Constitution, there can be but one solicitor in the county at the same time, clothed with lawful authority to discharge all the duties of that office ; and this solicitor is, necessarily, an officer *de jure ;* and he should be commissioned by the governor, and should take the oath of office required by the Constitution. Const. of Ala. 1867, Art. VI. § 17 ; also Art. XV. § 1 ; Rev. Code, § 148. On the other hand, the attorney appointed by the presiding judge need not be commissioned by the governor, and he need not take any official oath. His office is also an office *de jure.* He holds under a legal and sufficient authority.

For these reasons, it is my conviction that the learned judge in the court below should have given the second, charge asked by the accused on the trial below, as well as the first ; and for

[Walker *v.* State.]

this, in addition to the reasons stated in the opinion of the majority of the court, the judgment of the court below should be reversed and remanded.