(77 South. 353)

Ex parte STATE.

KRAMER v. STATE.

(6 Div. 613.)

(Supreme Court of Alabama. July 2, 1917. Rehearing Denied Dec. 20, 1917.)

1. CRIMINAL LAW ☞304(1) — JUDICIAL NOTICE—CORPORATIONS—POWERS AND ACTS.

While the courts will take judicial notice of a public office to which governmental powers are delegated, they cannot know, as matter of law, what offices attach, appertain, or belong to a private corporation, and can ascertain only as a jury might.

2. EMBEZZLEMENT ☞20 — CORPORATE OFFICERS—ESTOPPEL.

Under Code 1907, § 6830, defining and providing punishment for embezzlement by officers of a bank, one charged as "assistant cashier" with such crime is conclusively estopped to deny that there was such de jure office, and that he was such de jure or de facto officer, where he accepted election as such from the directors and so held himself out to the public for eight years,

and the state is not required to prove the same by the by-laws of the bank.

3. BANKS AND BANKING ⬦⟹113 — DE JURE OFFICE — DE JURE AND "DE FACTO OFFICERS."

It is possible for a bank corporation to create the de jure office of assistant cashier, but there need not be such de jure officer in order to have such de facto officer, and one elected by the directors and held out to the public for eight years as assistant cashier is a de facto, if not a de jure, officer of the bank.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, De Facto Officer.]

Sayre, J., dissenting in part. McClellan, J., dissenting.

Certiorari to Court of Appeals.

Joe H. Kramer was convicted of embezzlement, and appealed to the Court of Appeals, which reversed the judgment (75 South. 185), and the State brings certiorari. Certiorari granted, judgment of Court of Appeals reversed, and cause remanded.

W. L. Martin, Atty. Gen., and P. W. Turner, Asst. Atty. Gen., for the State. F. E. St. John, of Cullman, and Allen & Bell, of Birmingham, for appellee.

MAYFIELD, J. Kramer was indicted, and convicted by the circuit court of Cullman county, of the offense of embezzlement. He was indicted under section 6830 of the Criminal Code. That section reads as follows:

"Any officer, agent, clerk, or servant of any bank incorporated under any law of this state, who embezzles or fraudulently converts to his own use, or fraudulently secretes with intent to convert to his own use, any money, property, or effects belonging to or in the possession of such bank, or deposited therein, must be punished, on conviction, as if he had stolen it."

The indictment charged the defendant as an officer of a bank, to wit, as "assistant cashier" thereof. The judgment of conviction was reversed by the Court of Appeals solely upon the ground of variance. That is, that he was indicted as assistant cashier, whereas the proof showed that he converted or embezzled the money in some other capacity. In other words, the effect of the holding of the Court of Appeals was, that the defendant should have been indicted as treasurer, or agent, or clerk, and not as assistant cashier, because there was no such office as that of assistant cashier; that there can be no de facto office and, consequently, neither de facto nor de jure officer of a private corporation, unless there is a de jure office for him to fill. Stated differently, that the directors of a private corporation, under the laws of this state, cannot create an office; and that if they attempt so to do, and elect a person to the proposed office, who serves in the indicated capacity for eight years or practically during the whole life of the corporation, the creation and election are both abortive, and such incumbent is neither an officer de jure

nor de facto because the directors had no authority to create the office.

[1] It is very true that there cannot be a de facto public office, that is, an office to which a part of the sovereign powers of the state or government is delegated, because whether or not there is such an office is a question of law, and not of fact; but this is not true as to private offices, such as the subordinate offices of private corporations. Courts do not know and cannot know, as a matter of law, what offices attach, appertain, or belong to a private corporation. That depends upon the action of the stockholders or the directors, one or both. It is not even necessary that the evidence of their action in creating offices, or in filling them, be in writing; the court has no means of ascertaining them except as a jury might do; that is, it is a question of fact and not of law.

[2] The Court of Appeals bases its conclusion upon the facts, stated in its opinion, that the defendant was elected by the directors of the bank to the place or office of assistant cashier of the corporation; that he accepted the place and acted as such officer for eight years; and that conversion or embezzlement was committed by him while acting in such capacity. If this be true—and we must so treat it, as the conclusion and decision is based upon it—then it cannot be said as matter of law that there was no such office as that of assistant cashier, and that the defendant was not guilty as matter of law. This is not a case in which to determine the question whether or not the directors of the corporation exceeded their powers, or usurped those of the stockholders, or whether or not the stockholders ratified the acts of the directors in creating the office or making the place of assistant cashier. This is a criminal case, and not one to determine the respective rights, powers, and duties of the stockholders and the directors of the corporation, as to the act of the latter in electing the defendant to the place of assistant cashier. If the facts are as stated by the Court of Appeals, and, as stated, its conclusion and judgment is predicated thereon, it is wholly immaterial in this case whether the stockholders or the directors could or did create the office of assistant cashier, because both the corporation and the defendant are estopped—conclusively estopped—from saying that there was no such office as that of assistant cashier. The defendant, by the joint act of the bank and himself, was held out to the public, the state, and the world, as assistant cashier of this bank; as such he received the money of the bank, and as such he converted it, and in so doing he violated the criminal statutes of this state. And he will not now be heard to say:

"I cannot be convicted because there was no such office as that of assistant cashier, although

I held myself out as such officer, and as such received the money and converted it."

He cannot now be heard to say, in defense to this charge:

"You ought to have indicted me as a clerk or an agent of the bank. The corporation and I, acting together for eight years, said to the state and the public, 'Here is an officer of this bank; he is assistant cashier, not a mere clerk or agent; you may deal with him as such officer, and as such officer he may bind the bank; and the corporation is bound by his acts when he acts in that capacity, but not if he acts in some other,'"

—and then when the state indicts him for his acts in this capacity, or the corporation, for such acts of his, be heard to say that there was no such office, and consequently no such officer de facto or de jure. This would allow the corporation and the defendant, one or both, to perpetrate a fraud upon the public and the law—which of course will not be done. The same principle of estoppel was applied by this court, in all its rigor, in Diggs' Case, 49 Ala. 311.

The following strong and forceful language of Judge Brickell, with the quotations employed by him, in Diggs' Case, is here apt and conclusive. The fact that there was an office in the Diggs Case does not and cannot make any difference, in applying the principle of estoppel to both cases:

"His appointment, though defeasible and invalid, is color of title. If the defendant accepted the appointment, and exercised the duties of the office, he was an officer de facto, though there may have been a solicitor de jure claiming the office. The law, so long as he kept in the line of his official duty, would have extended him the protection afforded the rightful officer. Official responsibility, civil and criminal, is but just compensation for this protection. When he is called to answer for malfeasance, he cannot be permitted to assail the validity of his appointment; he is estopped from abnegating his official capacity. 1 Bish. Crim. Law, § 917.

"In Rex v. Berdett, 6 Car. & P. 124, a letter carrier was indicted for embezzling an overcharge on a letter delivered to him. No evidence of his appointment as a letter carrier was offered; but one of the witnesses incidentally stated that he acted as such. The statute under which he was indicted prohibited and punished embezzlement by public officers. The court submitted the fact of embezzlement, and the question whether the prisoner had acted as letter carrier, to the jury, declaring that if the two facts concurred, the prisoner was guilty; and he was convicted. In Allen v. McNeel, 1 Mill, Const. (S. C.) 459, it is said, 'When a person is sued for any act done by him in an official capacity, it does not lie in his mouth to say he is not the person he has held himself out to the world to be.' In State v. McEntyre, 25 N. C. (Ired.) 174, the court held: 'A person who undertakes an office, and is in office, though he might not have been duly appointed, and therefore may have a defeasible title, or not have been compellable to serve therein, is yet, from the possession of its authorities and the enjoyment of its emoluments, bound to perform all the duties, and liable for their omission, in the same manner as if the appointment were strictly legal and his right perfect.' "

The same principle was applied in Pentecost's Case, 107 Ala. 81, 18 South. 146, and it is conclusive here. This same principle of estoppel is applied as to both the Christian and the surname of defendants in criminal cases. If a man holds himself out to the public as bearing a given name, and he is indicted by that name, it is wholly immaterial that his name is not what he is called, or even that there is no person having such a name as that by which he is so known and called. The state, in such a case, is not required to prove that such is his real and legal name, or there is such a real and legal name. That the defendant is known and designated or identified by such name is all that is required.

We can see no difference where he is so identified by a given official title, if he has held himself out as being such officer, thus distinguishing himself from other officers, agents, or clerks of the corporation. If he is indicted by the title which he held himself out as bearing, it is of no consequence that he is really not such officer, or that there is no such office, because he is estopped from showing the truth of the matter if it be different from what he represented it to be to the public. Mr. Bishop thus states the law on the subject:

"One indicted for malfeasance in office cannot object that he does not hold the office de jure; his acting in it estops him to deny his right thereto"—and cites a number of cases supporting the text. 1 Bish. New Cr. Law, § 464.

[3] We do not deny or dispute the principle of law that in order for there to be an officer de facto there must be the possibility of an officer de jure, but it does not follow that there must be a de jure officer, in order for there to be a de facto one. If it were not possible under the existing law to have a de jure assistant cashier of a bank, then, of course, there could be no de facto one; but as there can be such an officer if the corporation so provides as authorized by law, and the corporation, through its directors, elects a person to that office and he accepts the election, and he is held out to deal with the public as such officer for eight years, and the public deals with him as such, and he is indicted for malfeasance as such officer of that bank, then both he and the corporation, in civil or criminal proceedings where the public or even one thereof is interested, are estopped from denying that there was such an office or such a de jure officer. They are as much estopped from saying there is no such office as from saying there is no such officer. In such cases, whether or not there is such an office, or whether one acting as such officer is a de facto or a de jure officer, is purely collateral. The prosecution of one acting as such officer, and who indisputably held himself out as such officer, as for malfeasance in such office, cannot be converted into a contest of election proceeding, or a quo warranto proceeding, to determine whether or not there is such an office, or who is entitled to discharge the duties and receive the emoluments

thereof. Such questions are strictly collateral in a criminal proceeding like this. While, of course, there must be proof that the defendant is such officer, if alleged so to be in order to support a conviction, yet this is sufficiently and conclusively done, by showing that the defendant acted as such officer for years, and was held out to the public as such officer. The state, in such cases, is not required to introduce the best proof of which the question is susceptible, because the question is purely collateral to the criminal prosecution; whereas, in quo warranto, or a contest of election proceeding, or the like, the same questions would be directly in issue.

The holding of the Court of Appeals is to the effect that in this criminal proceeding the existence of such an office as that of assistant cashier of the bank, a private corporation, can and must be proven only by a by-law, adopted and promulgated by the stockholders of the corporation. In this holding, we are of opinion, the Court of Appeals fell into error.

It results that the application for certiorari must be granted, and that the judgment of the Court of Appeals is reversed, and the cause remanded for further proceedings in the Court of Appeals.

Certiorari granted, and judgment reversed, and cause remanded.

ANDERSON, C. J., and SOMERVILLE, GARDNER, and THOMAS, JJ., concur in the opinion and decision. SAYRE, J., concurs in conclusion, but not in part of opinion treating of estoppel. McCLELLAN, J., dissents.