JANUARY 1832<br>Wilson<br>v.<br>Torbert.

Judgment affirmed.

Judge Crenshaw, not sitting.

————————

3s 307<br>107   91

McGee v. Eastis.

1. In this State a sheriff may appoint a general deputy by parol, or without writing, as at common law; and when so constituted, he may do any act of a ministerial nature, which his principal can.
2. A deed of conveyance of land, executed by such deputy, in the name and under the seal of his principal, is valid.

A. McGee brought an action of trespass to try title, against A. and W. Eastis, in the Circuit Court of Jefferson county. On the trial at March term, 1829, the plaintiff offered in evidence, in support of his title to the land in question, which had been sold by the sheriff, by virtue of an execution, a deed from the sheriff, drawn in the usual form, and executed in the following manner: "John B. Ayres, (seal) sheriff; by his deputy, William Ayres." The plaintiff proved by the sheriff, that said William Ayres was, at the time of making the deed, and for a long time had been his general deputy; though his deputation was not in writing. The defendant's counsel objected to the reading of the deed, because it was executed by a deputy; and on that ground, it was excluded by the Court. The point was reserved in a bill of exceptions, and is here assigned for error.

Peck, for the plaintiff in error. The point for the consideration of the Court is, can a general deputy of the sheriff, in the name of his principal, execute a deed for lands sold by him in virtue of a writ of *fieri facias.* To

JANUARY 1831

McGee
v.
Eastis.

shew that he can, I contend, 1st, that the right of the sheriff to appoint deputies, is a common law right, and necessarily results from the nature of his office. so far as it is ministerial.[a]  2nd. At common law, the sheriff was not required to appoint his deputy by writing, and as we have no statute prescribing the mode of appointment, a general appointment by parol is sufficient.[b]  Neither at common law, was a deputy required to be sworn. The statute of Elizabeth first required a deputy to take an oath of office.[c] In New York deputies are required by statute to be sworn.[d] 3d. The high sheriff when he has once appointed a general deputy, can in no manner whatever limit or circumscribe his powers, but in all matters ministerial, he has as full power to do any act or thing, as his principal.[e] 4th. Any act not judicial, may be performed by deputy,[f] unless the sheriff, by the writ itself, is commanded to execute it in person, as by the statute of Edward I.[g] which gave the writ to inquire of waste, which required the personal attendance of the sheriff, *"vicecomes in propria persona, assumptis secum duodecim,"* &c. so also the statute of Merton,[h] directs that the sheriff *"in propria persona accidat ad tenementum,"* &c. which is commented on by Chancellor Kent.[i]  4th. In England, a deputy may make a bill of sale upon execution, assign a bail bond;[k] and in New York, he may make a deed to land sold by him under a *fi. fa.*[l] from which I think it clearly appears, he can do the same with us, or at least for his principal.

ELLIS, argued for the defendants in error, and relied on the following authorities: 6 Bacon's Abridgment, 154, marginal; 1 Chitty's Blackstone, 345, note; 10 Johnson's Reports; Laws of Alabama, 309, section 9; 3 Washington's Circuit Court Reports, 546; 5 Massachusetts' Reports, 23.

By JUDGE WHITE.  The single question made for our consideration is, whether the deputy sheriff can make a deed in the name of his principal, for lands sold under execution, without a written deputation or authority under seal. As lands are never sold in England by virtue of executions, their books furnish no authority directly in point. They however contain analogous principles worthy of notice. At common law, a sheriff has a right to appoint deputies, though the King's letters patent do not expressly grant this authority. This power is incident to the very

---

[a] 1 Bachus on sheriffs 13. 4 Bac. Ab. 440, 1. 6 Ibid 154.
[b] 3 Bac. Ab. 740--1. 4 Ibid 209. 3 Mod. 147. Cro. Eliz. 67.
[c] 4 Bac. Ab. 442.
[d] 2 Bac. 92.
[e] I Back. 13. 14 Dal. on shffs. 3. 4. Bac. Ab 440 1, cites Hob. Salk. 95. Ld. Ray. 658. 12 Mod. 47, 467, 690.
[f] 2 John. R. 63. Cro. Eliz. 294. Bac. Ab title shffs. H. 3. 2 Wash. R. 126.
[g] 13 Bdw. I. C. 4.
[h] 20 H. 3 C. 3.
[i] 2 John. R. 71--2.
[k] 4 Bac. Ab. 440--1. 6 Ib. 156--7.
[l] 10 John. R. 223. 18 Ibid 7. 7 Cow. 745.

nature of the office, is in furtherance of justice, and in-dispensable to the full and complete discharge of the duties of a sheriff.[a]   But how are these appointments to be made?   On the tenth page of the book first above referred to, it is laid down, that in England every sheriff yearly before he returns any writs, makes a deputy of record in every one of the King's Courts.   These appointments are required to be proclaimed; and a certain number of them, says the same author, must be appointed and proclaimed in the shire town within the bailiwick, and they shall not live more than twelve miles distant from each other. These duties are required of the high sheriff, under the penalty of five pounds for every month they shall be omitted.   Though the author does not inform us whether these are common law or statutory requirements, yet from their very nature, it is obvious they are mere municipal regulations, directory to the high sheriff, designed alone to give publicity to the appointment of deputies, and in no way affecting the validity of their acts when appointed. They may be statutory regulations, commending themselves to the consideration of our legislators, but are surely not to be pronounced by this Court, as necessary to the legality of the appointment of deputies.   If this were done, two thirds, if not a greater proportion of the acts of deputy sheriffs in this State would be void.   And not merely their acts in executing deeds, but every other description. For if these things are essential to their appointment, then without them, they are not deputies, and all their acts as such, are void.   These remarks are made not because this position was taken in argument, but because some of the Court seem to entertain doubts from this quarter.   It is however insisted by the counsel for the defendant in error, that the appointment should have been under seal, to authorize the execution of the deed offered to the jury below. To this point, an authority from a note in Chitty's Blackstone,[b] is adduced.   It is there said, "the under sheriff is appointed by deed, which is afterwards filed in the King's remembrancer's office in the exchequer."   Here again we might remark, that we are not told whether this is required by statute or common law; and it seems to be a regulation for the purpose of giving notice of the deputation.   But if we take it to shew what it is said to import, then it proves too much; for it nullifies a large portion of the appointments of deputies throughout the State, and renders their acts void, of whatever character; whether of returns upon process, or executions of deeds.

JANUARY 1831

McGee
v.
Eastis.

[a] 1 Back. on shffs. 13.   6 Bac. Ab. title shff. 153.

[b] 1 vol. 254.

JANUARY 1831

McGee
v.
Eastis.

*a* Pages 208, 209.

*b* Page 13.

*c* Page 154.

*d* 2 John. R. 63.

*e* 2 Wash. R. 162.

But there is authority in the English books, which sustains the ordinary practice in our State, of appointing deputies by parol. In the latter clause of the very section already quoted from Backus on sheriffs, it is said "that the sheriff may make his under sheriffs, bailiffs and deputies, without deed or writing." Again, in 5th Bacon,*a* this doctrine is found: "that an office in which an interest is claimed lies in grant, and must be transferred by deed, yet a sheriff may make an under sheriff or deputy without deed, for he claims no interest in the office, and is a mere servant." These authorities, in my mind, are not irreconcilable with the former; they only refer to the different methods of doing the same thing, either of which is valid, and if so, a deputy sheriff may be made by parol, as in the case before us.

It remains to inquire what are his powers, when thus constituted a deputy? In 1st Backus,*b* these principles are stated: "the sheriff in appointing an under sheriff or deputy, cannot limit his authority, for it is essential to a deputy to have as full power to do any act or thing as his principal, and a covenant restrictive of this power, would be repugnant and void." He, it is true, must act in the name of his principal, and the latter has at any time a right to revoke his authority, but while the deputy retains it, he has ministerial powers, co-extensive with those of his principal; 6 Bacon's Abridgment,*c* has an authority to the same effect; and the author draws this deduction from the principles there laid down: "therefore, he says, it is now universally agreed, that the under sheriff may make bills of sale upon executions, assign bail bonds, make return on writs, and in general do every thing that the sheriff himself can do." In the case of *Tillotson v. Cheetham,*d* where it is decided that a writ of inquiry of damages may be executed before a sworn deputy of the sheriff; the Chief Justice goes into an able and elaborate examination of the origin and powers of deputy sheriffs; he shews that the deputy is an officer coeval with the sheriff, that his powers were well ascertained at an early period, and that a general criterion whereby to test the extent of his authority is this: whenever the sheriff is directed by his name of office, and not in *propria persona*, to do a particular act, he may do it by deputy, unless it be of a judicial character. Hence he says he may execute writs of inquiry, writs of *elegit*, and do any other act not requiring the exercise of judicial functions. The case of *Ware v. Harris,*e* is to

the same effect. If then the deputy in the present case, being appointed by parol, was a legal deputy, as I think has been shewn, and if with this authority, according to the principles cited, he had a right in the name of his principal, to do all ministerial acts, which the high sheriff was required by the name of his office to do, it follows that the deed in question was properly executed by him, unless it comes within one or other of the exceptions mentioned; and this cannot be seriously insisted on, for it is clearly an act ministerial, and required to be done by the sheriff or other officer selling the land in their official character, and not by virtue of special commission.[a] And this view of the question, in my mind, fully meets and obviates the force of the doctrine insisted on by the defendant's counsel. Admit it to be true, as a general principle, that between individuals, a deed cannot be made by an agent, but in virtue of authority of equal dignity, yet it by no means follows that the law cannot invest its officers with powers, essential to the ends of justice, in a manner differing from that which it requires between one private individual and another. The cases are entirely dissimilar. In the one, it is the act of a private person imparting authority, which act is the only source of authority. In the other, the law transfers the power to the sheriff by his name of office, and establishes the principle, that whatever the high sheriff is thus required to do of a ministerial nature, the deputy may do in his name, as fully as he himself could do it. The law then in such cases, invests the deputy with his principal's authority to act. But we are not left to general reasonings and deductions on this subject. The case of *Jackson v. Bush,*[b] is an authority much in point. There is no difference between that case, as treated by the Court, and the one before us; for although there was a deputation by deed there, yet the Court lay no stress on that circumstance. They do not even advert to it in their opinion, but base the decision entirely on the principles of the case of *Tillotson v. Cheetham,* already cited. Their language is, "the deed executed by the deputy sheriff, in the name and on the behalf of his principal, was a good execution of the deed. A sale, and the consummation of that sale by deed, are acts which the sheriff may do by deputy; the law does not require them to be done by the sheriff in person, and the general principles on this subject were fully illustrated in the case of *Tillotson v. Cheetham.* The same principle is decided in *Jackson v. Davis.*[c] On

*Margin notes:*
JANUARY 1831

McGee
v.
Eastis.

[a] Laws of Ala 309.

[b] 10 John. R. 223.

[c] 18 John. R. 7.

the tenth page, the Court in noticing the overruling the objection taken below, that the deed was executed by a deputy sheriff, without shewing any special authority to do that particular act, say "they see no reason to doubt that decision. He was admitted to be in part, a general deputy: and that is sufficient to authorize his executing the deed for the sheriff, as well as any other act which might be done by deputy." Now to apply these principles to the present case, is it not admitted, or rather was it not proven, that William Ayres was, at the time of executing this deed, and for a long while before, the general deputy of John B. Ayres? Why then should he not have been authorized to execute this deed. The question is not whether he had special authority, nor whether his authority was by deed, but whether he was in fact a general deputy; this being proven, the deed was well executed by him. In 7 Cowen,*a* we find the same doctrine laid down as the settled law of New York; nor can I perceive danger or inconvenience from this doctrine. It is nothing more than the consummation of an act, public in its nature, sanctioned by judgment and execution, beneficial to commerce, and not prejudicial to the party whose land is sold. From him the title is divested by the sale, and the deed only furnishes evidence of title to the purchaser. Should the high sheriff be required to execute deeds in all instances, delays and consequent injuries might result. If there be a necessity for a sheriff acting by deputy, as to some ministerial acts, I see not why that necessity should not extend to all. As to the publicity of a deputation, convenience may require that it should exist to a reasonable extent, but there is no impropriety in supposing that an officer of this kind is ever mysteriously or rashly introduced to the community. A few official acts would develope his authority more completely, than a deed filed away in his desk, or even spread upon the records; all that he does as an officer, is in view of the public. Whether he attends Courts, serves writs, or levies executions, he is continually proclaiming his official character. But if it were even conceded that a great degree of publicity were necessary, the evidence shews in this case, that was the fact. In every view then, that I can take of the question, I am led to the conclusion, with a majority of the Court, that the Circuit Court erred in excluding the deed from the jury; and that therefore, the judgment must be reversed and the cause remanded.

*a* Page 745.

By JUDGE CRENSHAW. In this case I admit that a deputy sheriff may in the name of his principal, do all ministerial acts which the high sheriff himself might do, by virtue of his office. That to sell land under an execution, and execute a deed of conveyance to the purchaser, are ministerial acts which may be done by a deputy sheriff. Indeed the authorities are too clear to attempt to controvert this proposition. But this supposes the acts to have been done by a lawful deputy. Whether the record in the present case shews a lawful deputy is now the only inquiry. I hold, that to constitute a lawful deputy or under sheriff, his appointment must either be entered of record in the Court where he is deputy, or the deputation must be by deed, filed as of record in the Court. The high sheriff may make his appointment by parol, but whenever the acts of the deputy are called in question, the evidence of his authority must be derived from the above source. In Bachus' sheriff,[a] it is laid down as a part of the common law, "that every sheriff, before he returns any writs, makes and proclaims a deputy of record in every of the King's Courts, and that the appointment thus made need not be by deed." In 1 Chitty's Blackstone,[b] it is said that "the under sheriff is appointed by deed, which is afterwards filed in the remembrancer's office in the Exchequer."

From these authorities taken together, I think it clearly deducible, that the only authentic evidence of the appointment of a general deputy sheriff, is an entry of record, or deed filed as of record in the Court, shewing the appointment. If then we recognise the officer at all, we must resort to the common law for the mode of authenticating the appointment; and at common law, it seems to me that none would be legal, except one or the other of the modes above stated. I care not how the sheriff makes the appointment, whether by parol or otherwise, my position and conclusion is, that whenever the acts of his deputy are called in question, the authentic evidence of his appointment will be an entry of record, or a deed filed of record in the Court, shewing the appointment. The reason why the appointment should be thus made, is obvious; it is in order to give public notoriety of the fact that an under sheriff has been appointed, to whom the community may look for the transaction of business, when from sickness or other cause, the principal sheriff may be unable to attend to the duties of his office; and mainly that those offi-

JANUARY 1831

McGee
v.
Eastis.

*a* Page 10.

*b* Page 254.

JANUARY 1831

McGee
v.
Eastis.

cial acts of the under sheriff, which are to become solemn matters of record, may flow from an authority and be authenticated by evidence of equal solemnity. Hence the ground of decision taken by the presiding judge below, that the under sheriff, in order to execute a valid deed of conveyance of real estate, in the name of his principal, must act under an authority of the same dignity, to me appears firm and immutable. An entry of record, or a deed filed of record, shewing the appointment, would be evidence of equal dignity, and nothing less, as I understand the law, ought to be received as evidence of the fact of appointment. Were this not the law, evidence of the fact that the deputy had been legally appointed, must depend on the frail memory of men, and in case of the death of the principal, unless witnesses were called to the appointment, it would become impossible to prove that the deputy had been appointed at all.

In the case under consideration, the only evidence that the person who executed the deed of conveyance, was a general deputy, is the parol testimony of the high sheriff, now out of office. According to my premises, this testimony was improper and insufficient, and consequently the Circuit Court did not err in rejecting the deed of conveyance.

Reversed and remanded.

JUDGE LIPSCOMB, not sitting.