## HARRIS ET AL v. BRADFORD.

1. Where a notice to a sheriff and his sureties stated that the plaintiff *did* move for judgment against them for a failure to return an execution, &c. on the eleventh day of the term, which day was four days after the date of the notice—*Held*, that although the notice was in the past, it was to be understood as referring to a motion to be made in future.

2. In a proceeding against a sheriff and his sureties, if the former only plead, the fact of suretyship must be proved—but if the sureties alone appear and plead, they must put in issue the execution of the official bond, by a plea of *non est factum*, in order to require the plaintiff to prove their suretyship.

3. It is an available defence for a sheriff, or his sureties, in a summary proceeding against them, for the failure of the former to return an execution, that he had placed it in the hands of a deputy to execute and return, who was prevented by sickness, which disqualified him for such business, from returning the execution —and that the sheriff was absent from the county, having left it when the deputy was able, and expected to, perform the duties of his office.

4. It is no excuse at law for the failure of a sheriff to return an execution, that the defendant therein was insolvent while the same was in force.

5. The discontinuance of the notice of a motion for failing to return an execution, as to the sheriff and such of his sureties as have not been served, will not affect a judgment rendered against the other sureties.

Harris et al v. Bradford.

6. A memoranda written by the presiding Judge across a motion entered on the motion docket, will authorise an entry *nunc pro tunc*, at a succeeding term.

7. When the Judge of the County Court has taken the bond of a sheriff, and deposited it in the Clerk's office, he cannot withdraw the same and alter or vacate it, on the ground that it was not such as he had intended to approve. This being the case, an alteration made by him, though in a material part, will not affect its validity.

WRIT of Error to the Circuit Court of Tallapoosa.

This was a proceeding by motion against the plaintiffs in error as the sureties of Martin T. Ellis, sheriff of Tallapoosa, for the failure of the latter to return an execution previously placed in his hands at the suit of the defendant in error, against John Bradford. The notice is addressed to the sheriff and his sureties by name, sets out the time of the issuance of the execution and its delivery to the sheriff, as well as its amount, &c. and proceeds as follows: " And the said Martin T. Ellis having failed to return said ` writ of execution, the said plaintiff did, during the present term of the Circuit Court, to be holden for said county of Tallapoosa, on Friday, the eleventh judicial day of said term, being the 9th day of April, instant, move for judgment against the said Martin T. Ellis, late sheriff as aforesaid, and the said Major Harris," &c., "his sureties as aforesaid for the amount of said writ of execution and costs of this motion. 5th April, 1841."

At the term of the Court indicated by the notice, a motion in the form of a suggestion was submitted for a judgment against the defendants for the amount of the execution—and a discontinuance was entered as to the sheriff and one of his sureties, on whom the notice was not served.

The defendants demurred to the notice, and their demurrer being overruled, they craved oyer of the sheriff's bond, and pleaded—

1. *Non est factum.*

2. A denial of the fact that they were sureties as alledged.

3. As an excuse for the failure to return the execution, the sickness of the sheriff's deputy, to whom it was intrusted, and the absence of the sheriff from the county.

4. That the sheriff did not fail to return the execution as alledged.

5. The defendant in execution was insolvent from the time the execution was received up to the period when it was returnable.

The plaintiff took issue on the first and fourth pleas, and on his motion the second plea was stricken out—thereupon he demurred to the third and fifth pleas, and his demurrer being sustained, the cause was tried on the issues of fact.

On the trial the presiding Judge sealed a bill of exceptions, at the instance of the defendants, from which it appears that the bond executed by the sheriff and his sureties, was, when approved by the Judge of the County Court, in the penal sum of seven thousand dollars, that the Judge of the County Court had intended to require of the sheriff a bond for ten thousand dollars, and at the time of its approval supposed such was the penalty inserted—but after the bond was approved and handed to the Clerk to be recorded, it was discovered that the penalty was not what the Judge had intended, and he then altered it by writing the word "ten" over "seven." All this was done without any intention on the part of any one to defraud, and the bond as recorded was for ten thousand dollars.

The Court charged the jury, that if the Judge of the County Court approved the bond under a belief that it was for ten thousand dollars, and would not have approved it had he been aware that it was for but seven thousand dollars, yet it was a valid bond for the latter sum: And further, if the Judge actually approved and handed the bond to the Clerk for record and afterwards wrote upon the word *seven* the word ten, no one assenting thereto, yet it was a valid bond for seven thousand dollars.

The counsel for the defendants moved the Court to charge the jury—

1. That if the Judge of the County Court approved the bond for seven thousand dollars under a mistake, believing it was for ten thousand dollars, it was not a valid bond even for the smaller sum.

2. If the Judge who approved the bond altered the same in a material part, without the assent of the sureties therein, it was thereby rendered invalid. Which charges the Court refused to give.

The defendants also offered evidence to show the insolvency

of the defendant in execution during the time the same was in force, but this evidence was rejected by the Court.

At a term of the Circuit Court holden in April, 1842, the plaintiff by his counsel moved the Court to cause an entry of the motion in this case to be made and continued as of April term, 1841. It being shown to the Court that the motion was then entered on the motion docket, and across that entry, in the hand-writing of the presiding Judge was written "continued," the minutes were directed to be perfected *nunc pro tunc.* A verdict having been found for the plaintiff, and judgment thereon rendered, the defendants have sued a writ of error to this Court.

It is here assigned for error—

1. That the Circuit Court struck out the second plea on motion.

2. That the demurrer was sustained to the third and fifth pleas and overruled to the notice.

3. The motion was discontinued, and the continuance should not have been entered *nunc pro tunc.*

4. The Court erred in the several matters shown by the bill of exceptions.

Morris and N. Harris, for the plaintiffs in error.—The third plea sets out a sufficient excuse for the failure to return the execution, and the demurrer to it was improperly sustained. [Roberts & Battle v. Henry, 2 Stew. Rep 42.]

The motion was discontinued in the Circuit Court by the omission to enter upon the minutes a continuance at the term at which it was submitted, and the entry *nunc pro tunc* was irregular. [Thompson v. Miller, 2 Stew. Rep. 470; Broughton et al v. The State Bank, 6 Porter's Rep. 48; Armstrong v. Robertson & Barnwell, 2 Ala. Rep. 164.]

Anciently, the alteration of a bond by a party, or privy, even in an immaterial part avoided it, and a material interlineation or erasure by a stranger had the same effect. [11 Coke's Rep. 27; Bull. N P. 267; Com. Dig. Tit. Fait, 166; Cro. Eliz 626, 657; 5 Co. Rep. 23; 5 Taunt. Rep. 706; Shep. Touchs. 69.] The modern rule seems to be that the alteration of a bond by a party, or privy, to avoid it must be material, and that no alteration by a stranger will affect its validity. [15 John. Rep.

297; 6 Cow. Rep. 746; 10 Conn. Rep. 192; 18 John. Rep. 499; 16 Sergt. and R. Rep. 44; 1 Nott & McC. Rep. 554.] The Judge of the County Court must be regarded the agent of the State, who is a party, and the alteration of the bond by him made it invalid for all purposes. [Aik. Dig. 388, 387; Jewett et al v. Hodgson, 3 Greenl. Rep. 103; Miller v. Stewart et al, 9 Wheat. Rep. 680; United States v. Hatch, Paine's Rep. 336; Barrett v. Thorndyke, 1 Greenl. Rep. 73; O'Neall v. Long, 4 Cranch's Rep. 59.]

The bond was never good even for seven thousand dollars, for want of the approval of the Judge of the County Court. True the bond was approved in fact, yet the Judge was mistaken as to the amount of the penalty, or he would have rejected it. This misapprehension prevented the approval from becoming operative; and it was competent for the Judge to call upon the sheriff to permit such a bond as he had intended to require, and supposed he was receiving.

Lastly—the act of 1819, [Aik. Dig. 164,] does not authorize the recovery of a judgment against the sheriff and his sureties for the failure to return an execution. True it was decided otherwise at an early day, and that decision has been repeatedly followed, yet as these decisions are sustained by a misconstruction of the statute, with which the present members of the bench have expressed themselves dissatisfied, we respectfully ask that they may be overruled, and the act receive the exposition to which, upon principle, it is entitled.

CHILTON, with whom was B. F. PORTER, for the defendant. An alteration by a stranger does not avoid a deed. [6 East's Rep. 308; S. C. 2 Smith's Rep. 400.] After the approval and delivery of the bond for registration, the Judge of the County Court had no authority to act further in regard to it, and his interference was that of a stranger. [Rees v. Overbaugh, 6 Cowen's Rep. 746, and cases there cited.]

Upon the other points raised they were willing to submit the cause without argument.

COLLIER, C. J.—1. The demurrer to the notice was properly overruled. Every material fact necessary to be alledged is stated in the notice—and the only objection to it is, that in-

stead of saying a motion will be made at the time indicated, it states " that the plaintiff did move for judgment." This must be considered as a mere verbal mistake, which may, or may not, have been made by the Clerk, but be this as it may, it cannot prejudice; for it appears by a reference to the date of the notice, that the motion would be made four days there-after.

2. If this proceeding had been instituted against the sheriff and his sureties, and the former alone pleaded, it would have been necessary to prove to the Court the fact of suretyship. [McWhorter et al v. Marrs, Minor's Rep. 376; Barton et al v. The Bank of the State; 1 S. and Porter's Rep. 471; McRae et al v. Colclough, 2 Ala. Rep. 74.] But the motion was against the sureties alone, who appeared and pleaded, and it was not necessary to show that they executed the official bond of their principal; unless the pleading put that fact in issue. The *onus* of making such proof in such a case, it has been held, can only be thrown upon the plaintiff by a plea of *non est factum*, which the statute requires to be verified by oath. [Jameson v. Harper, 1 Porter's Rep. 431.] The finding of the jury against the defendants on the issues, affirmed their partnership, and the second plea, according to the case last cited, was clearly bad, and therefore correctly stricken out

3. In Roberts and Battle v. Henry, [2 Stewart's Rep. 42,] it was determined that the statutes which make a sheriff liable to pay the amount of an execution, which he had failed to return, was not so peremptory in its terms as to admit of no excuse for the omission. That case it is true was a suit in equity, in which the complainant alledged as an excuse for not defending at law, his inability to attend the Court, so as to resist the motion. But the principle it is conceived must obtain at law; for the powers of the latter forum are in this respect co-extensive with those of Chancery, if the defence can be made out by legal proof. There the sheriff attempted to show that he had placed the execution in the hands of a man who was going to the office of the Clerk who issued it, to be delivered to him, in obedience to its mandate—it having been issued from a distant county. So in Marchbanks v. Rogers, [1 Stew. Rep. 148,] the Court said that a motion for failing to return an execution

would not lie against a sheriff where it appeared that execution had been superseded.

The sheriff who fails, from neglect or other cause to return an execution, may be called on to answer to a rule *nisi*, for an attachment, yet the mere omission of duty is not conclusive to show that he is guilty of a censurable violation of law. Now we will not say that the proceeding provided by statute is analagous to the common law remedy by attachment, but we will say, that in expounding the statute a regard should be had to pre-existing remedies; and though the terms of the act may be imperative, the old law, as well as the reason of the thing, should be referred to in order to ascertain the qualifications, and soften its seeming harshness.

A sheriff is not obliged to perform in person all the functions of his office, but it is competent for him to appoint a general deputy, either verbally or by writing, and a deputy so constituted, may do any act of a ministerial nature, which his principal could do. [McGee v. Eastis, 3 Stew. Rep. 307; see also Tillotson v. Cheetham, 2 John. Rep. 63; Jackson ex dem Masten v. Bush, 10 ib. 223; Jackson ex dem Randall v. Davis, 18 ib 7; Brookyin v. Patcher, 8 Wend. Rep. 47.] But the sheriff cannot, by intrusting his official business to a deputy, free himself from responsibility—he will be answerable *civiliter* for the acts of the latter. Yet it would seem that he will not be chargeable for an omission or act of his deputy, which, if attributable to himself personally, would not be regarded as a violation of duty. If the sheriff had retained the execution, and at the time when it should have been returned was too sick to return or cause its return, this upon the authority cited, would have excused the omission. And will it not equally avail him to show that he had intrusted the execution to a deputy who was prevented from returning it in consequence of sickness, and that absence from the county prevented him from giving his own attention to the business? In reason, we think, the cases are not distinguishable.

In cases of this character the usual exactness in pleading is not required, but it is entirely regular for the sheriff or his securities, without respect to form, to state by way of plea the facts on which he relies for his defence. The third plea sufficiently informs the plaintiff what the defendants proposed to

prove. True it is not alledged *in totidem verbis* that the sickness of the deputy sheriff was so severe as to render it exceedingly difficult, if not impracticable for him to return the execution, yet terms perhaps of equivalent import are stated—and in order to make out the plea, it should be shown that the sickness relied on as a defence was such as disqualified for such business. Nor will the mere sickness of the deputy avail but it should be shown that the sheriff left the county at a time when he was able, and expected to perform the duties of the office.

This defence being available for the sheriff must be good for his sureties, whose liability cannot be more extensive than that of their principal.

4. It has been repeatedly held here, that a sheriff or his sureties, against whom a motion has been made for the failure to return an execution, cannot be permitted to alledge the insolvency of the defendant as an excuse for the neglect. Whether such an allegation can be entertained in a Court of Equity, it is foreign to our purpose to inquire; but we cannot forego the remark that a recovery against the sheriff, when it is obvious that nothing could have been made on the execution, is indefensible in morals, and must be denounced when scanned by an enlightened conscience. This remark of course has no application to the case before us, for we cannot know but that the defendant in execution was entirely solvent.

5. The discontinuance, (as it is somewhat inaccurately called,) as to the sheriff and his sureties not served with a notice, does not affect the regularity of the judgment against the other sureties. The plaintiff was expressly authorized by statute " to recover judgment against such of the parties as service may have been effected on." [Act of January, 1841, Meek's Sup. 346; see also Hill v. The Bank of the State, 5 Porter's Rep. 537; Bondurant et al v. Woods & Abbott, 1 Ala. Rep. 543.]

6. The entry of the motion made in April, 1842, as of the term when it was submitted was regular and is sustained by repeated decisions of this Court. The motion docket contained a *memoranda* which warranted the Court in perfecting that which should have been previously done.

7. The Judges of the County Courts are invested with au-

thority to take the bonds of sheriffs in their respective counties, and are directed to deposit them in the Clerk's office. [Aik. Dig. 388.] This is a special power, and when it has been exercised, the Judge is not authorized to withdraw and alter or vacate the bond, under a pretence that it was not such as he had intended to approve. The sureties can rarely be prejudiced by a mistake of the Judge of the County Court in this respect, for he is required on application of any one of them to call on the sheriff for a new bond, and if the same is not given to vacate his office. It is not competent for the sureties to alledge that the bond is invalid because the penalty is less than the Judge had intended to require, or supposed it to be—if it was executed and delivered by them, or their authority, it became obligatory upon them as soon as it was received and deposited with the Clerk.

The modern rule as to the effect of an alteration of a bond, has been correctly stated in argument, and has been heretofore affirmed by this Court. [Brown v. Jones, 3 Porter's Rep. 420.] If, as we have said, the power of the Judge of the County Court is limited to the taking and depositing the bond, it necessarily follows that when this has been done, he is a stranger to it, not even entitled to its custody. This being the case, the substitution of *ten* for *seven* thousand dollars, however material and destructive if done by a party, or privy, cannot, when made by a stranger, impair its validity as a bond for the latter sum.

To conclude, we are unable to discover any error in the points presented, save only in overruling the demurrer to the third plea—and for that cause alone the judgment is reversed and the cause remanded.