KINARD v. GLENN.

1. A bond taken by a clerk of court under an order of court, was conditioned to pay $1,088.31. Upon its production in this suit, it appeared that an asterisk had been inserted in the body of the bond where the amount secured was written, and with a second asterisk at the foot, the clerk had written, at a subsequent date, that the real amount was $1,056.99, there having been a mistake in the calculation. *Held*, that the Circuit Judge correctly ruled as matter of law, that there had been no alteration of the bond, and he properly refused to submit this question to the jury.

2. The condition of the bond being that the obligors "shall well and truly account for the sum of $1,088.31 upon a final settlement of the estate of G., deceased." *Held*, that this bond did not draw interest from its date, but only from its maturity. MR. JUSTICE McIVER *dissenting.*

Before NORTON, J., Newberry, December, 1887.

This was an action upon a bond which, in *Chalmers* v. *Glenn*, 18 S. C., 469, was held not to be due until the estate of George W. Glenn, deceased, was ready for a final settlement. This bond was as follows:

STATE OF SOUTH CAROLINA, }
   County of Newberry.     }
Know all men by these presents, that we, George W. Glenn and Martha S. Glenn and T. W. Wier, are holden and firmly bound unto Jesse C. Smith, Esquire, clerk of the Court of Common Pleas for Newberry County, in the State aforesaid, in the full and just sum of two thousand and two hundred dollars, to be paid to the said Jesse C. Smith, or his successors, clerks of said court in this county, or to their certain attorney or assigns. To which payment, well and truly to be made, we bind ourselves, and every of us, our and every of our heirs, executors, and administrators, for the whole and in the whole firmly by these presents. Sealed with our seals and dated the 22nd day of December, in the year of our Lord one thousand eight hundred and seventy-four, and in the nine-ty-ninth year of American independence. Now, the condition of the above obligation is such, that if the above bound George W. Glenn shall well and truly account for the sum of one thousand * and eighty-eight dollars and thirty-one cents upon a final settlement of the estate of George W. Glenn, deceased, then this bond to be null and void; otherwise to remain in full force and virtue.                  G. W. GLENN, [L.S.]
                              MATTIE S. GLENN, [L.S.]
                              THOS. W. WIER, [L S.]

Signed and sealed in the presence of
        RICHARD BROWN,
                *As to Geo. W. and Martha S. Glenn.*
        JAMES F. KILGORE,
                *As to T. W. Wier.*

* The condition of the within bond should have been for the payment of one thousand and fifty-six dollars and ninety-nine cents, instead of one thousand and eighty-eight dollars and 31 cents, which was entered by a mistake made in calculation of interest.                     JESSE C. SMITH,
                                *C. C. P. N. C., S. C.*
Newberry C. H., Dec'r 30th, 1874.

The only two points involved in the appeal were as to the alteration of the instrument and the time from which it bore interest.

The rulings and charge of the judge upon these points are fully stated in the opinion of this court. The requests to charge bore only upon these two points, and were covered by the charge as made.

*Mr. W. H. Lyles*, for plaintiff.

*Mr. Geo. S. Mower*, contra.

November 27, 1888. The opinion of the court was delivered by

MR. JUSTICE McGOWAN. · In the progress of the suit of Mary A. Glenn *et al. v.* James W. Law *et al.*, to partition the lands of George W. Glenn, deceased, the following order was made December 22, 1874 : "*Ordered*, that the clerk of this court do loan out to Dr. George W. Glenn any money which has or may be paid in this case, upon his securing the payment of the same either by personal security or collaterals, or both, upon the final settlement of the estate of Dr. George W. Glenn, deceased." Thereupon the clerk, on December 22, 1874, took a bond from Dr. George W. Glenn and his co-defendants herein as sureties, in the penal sum of $2,200, conditioned as follows: "Now the condition of the above obligation is such that if the above named George W. Glenn shall well and truly account for the sum of one thousand* and eighty-eight dollars and thirty-one cents, upon a final settlement of the estate of George W. Glenn, deceased, then this bond to be null and void, otherwise to remain in full force and virtue."

No alteration was made in the terms of the bond, but at the foot of it, manifestly being the matter indicated by the first star in the context, the following memorandum was officially entered by Jesse C. Smith, the then clerk of the court and custodian of the bond : "* The consideration of the within bond should have been for the payment of one thousand and fifty-six dollars and ninety-nine cents, instead of one thousand and eighty-eight dollars and 31 cents, which was entered by a mistake made in the calculation of interest." An exact copy of bond and the star memorandum should appear in the report.

At the time the bond was given, the principal obligor, who got

the money, was administrator of the estate of George W. Glenn, deceased. The complaint alleged that the estate "was ready for a final settlement," and that upon demand made for payment it was refused, whereupon the action was brought on the bond. The defendants answered, alleging that the bond had been altered and changed in a material part, without their knowledge or consent, which rendered it void; but if not, it could only bear interest from the final settlement of the estate, which had not yet taken place, &c. The defendants objected to the admission of the bond on the ground that it had been destroyed by the alleged alteration, and this motion being overruled, they moved for a non-suit on the same ground, which was also refused. They then made several requests to charge, which are in the Brief. The presiding judge declined to charge them, except as they were covered by his general charge, as follows :

"That even though there was an intent to make the alteration, still it was not made, and the note at the foot of the bond does not any more amount to an 'alteration,' than if it had been on a separate piece of paper. There is never any interest upon money until it is due; and it has been decided by the Supreme Court that this money was not due until the final accounting. See *Chalmers* v. *Glenn*, 18 S. C., 469. The record shows that the estate is ready for a distribution, and no demand has been proved until the commencement of this action. And the interest must therefore be counted from the commencement of the action, admitted to have been July 16, 1887," &c.

The jury found for the plaintiff the sum of $1,121, and both parties appeal to this court—the plaintiff because the judge charged that the bond did not bear interest from its date, and that the jury could only find interest from the commencement of the action, agreed upon as the date of the demand.

DEFENDANTS' EXCEPTIONS.—"1. Because his honor refused to charge the jury, as requested, that it appears upon the face of the bond sued on that it has been altered in a material part. 2. Because his honor refused to charge the jury, as requested, that if the jury find that the change in said bond was made with the intent to alter the amount stipulated in said bond to be made, then the bond is void, and the plaintiff cannot recover thereon.

3. Because his honor refused to charge that the defendants are entitled to a verdict in their favor. 4. Because his honor charged the jury as follows: 'I charge you that even though there were an intent to make the alteration, still it was not made, and the note at the foot of the bond does not any more amount to an alteration than if it had been upon a separate piece of paper,' &c."

It is within the province of the judge to construe a written instrument. We concur with the Circuit Judge that there was no alteration of the bond, in the sense of the rule upon that subject. As he correctly said: "The very carefulness with which the star upon the left of the bond and his memorandum at the bottom are made, is as if he had said, 'Now, I am not authorized to make an alteration in this bond; but I have done an injustice unwillingly to these parties. I may be dead or I may be in Ohio, or I may be somewhere else where I cannot be come at, and I desire to leave, where it will be as permanently found as the record itself, that I have made this mistake, so that the parties, whom I deem to be honest, may have a correction made according to the real facts of the case; and I don't change the words in the condition of the bond itself, but I give a memorandum by which that condition may be corrected when the parties come for this final settlement.' "

Whether an alteration is material is a question of law, and it is held to be error for the court to leave it to be determined by the jury. 6 *Wait Act. & Def.*, 473. In the view that there was no material alteration, it is difficult to understand how it could have been left to the jury to determine "whether the change was made with the intent to alter the amount stipulated for." Smith, the clerk, was the official custodian of the bond, but had no personal interest in it to induce him to make a corrupt alteration—especially one reducing instead of enlarging the amount. It had been made his duty to take the bond, and after he had done so, he found that he had made a small mistake in the calculation of the interest, and like an honest man, he attached a memorandum in order to call it to the attention of the parties when they came to settle. We think there was no error in the charge of the judge as to the alleged alteration of the bond.

*Hunt* v. *Gray*, 35 N. J., 227; S. C., 10 Am. Rep., 232; *Harris* v. *Bradford*, 4 Ala., 214; *Black* v. *Childs*, 14 S. C., 322.

It is true that there is much learning, and, indeed, some confusion, in the books as to when interest will or will not run, when there is no express stipulation as to the time when it is due and payable. But when the parties themselves undertake to fix the time when the money is payable, that is conclusive as to the time from which interest will run, as interest is compensation by way of damages for the detention of another's money after the time at which, by law or the contract, it should have been paid. "If the parties choose to fix a future day of payment, and make no stipulation for the accruing of interest in the meantime, interest cannot accrue before the principal sum is due and payable. In general, the rule is that when a sum is liquidated and ascertained and to be paid on a certain day, without any reference to the subject matter of the contract, interest is allowed from the day fixed for payment." *Cannon* v. *Beggs*, 1 McCord, 370; 10 A. D., 677; *Schmidt* v. *Limehouse*, 2 Bail., 276.

There is no doubt that the money about which this contention arises, belonged to the heirs of George W. Glenn, deceased—that George W. Glenn, jr., to whom it was transferred, was the administrator of the estate of George W. Glenn, sr.; and if the money had been received by him in the due course of administration, he would, upon final settlement, have been accountable for the interest thereon from the time he received it. But here we are bound by the express words of the bond itself, "If the above bound George W. Glenn shall well and truly account for the sum of $1,088.31, upon a final settlement of the estate of George W. Glenn, deceased." If the word used had been "pay," there could have been no possible doubt about it. But the word is "account for." Possibly the parties may have supposed that the phrase "account for upon final settlement," would carry the intermediate interest, precisely as if the money had been received by the administrator in the due course of administration. The view is certainly plausible. But the money arose from the proceeds of real estate, which were not within the scope of the administration. Technically, it was a loan to George W. Glenn individually, and nothing whatever was said about the interest,

either before or after the debt was payable. Under these circumstances we cannot say that the presiding judge erred in applying the well settled general rule above stated—that the law does not give interest on a contract to pay money at some future period, where the parties have not clearly agreed that it should bear interest in the meantime. It is true that the money was bearing no interest in the hands of the clerk. It would probably be some time before a "final settlement" could take place; and it may be that the purpose was to "loan" it out upon good bond, and in that way secure interest for the distributees. But if that was the object, it was not clearly expressed; and as the Chief Justice said, in *Chalmers* v. *Glenn,* 18 S. C., 473, "He obtained it (the money) under an order of the court, and he can only be made accountable upon the terms by which he obtained it, and which appear in his bond."

The judgment of this court is, that the judgment of the Circuit Court be affirmed.

MR. CHIEF JUSTICE SIMPSON concurred.

MR. JUSTICE MCIVER. I concur except as to the matter of interest. It seems to me that the terms of the contract, viewed in the light of the circumstances under which it was entered into, made the defendants liable for interest from the date of the bond.