# Pentecost v. The State.

*Indictment Against Officer for Voluntary Escape.*

1. *Parol proof admissible to prove written appointment of deputy sheriff.*—The statute (Code 1886, § 809) does not require the appointment of a deputy sheriff to be made in writing, and where the question of such appointment comes up collaterally and the appointment was in writing the contents of the writing may be shown by parol evidence without the production of the writing.

2. *De facto officer.*—A person who, without having taken the oath prescribed by law, acts. under appointment from the sheriff, as a deputy sheriff, in making an arrest, cannot defend against an indictment for a voluntary escape on the ground that he had not taken the oath required by law, since his appointment and acts thereunder constituted him a *de facto* officer.

3. *Secondary evidence of lost writing.*—The existence of a record or office paper and its subsequent loss being admitted by one against whom it is desired to use it, secondary evidence of its contents may be given.

4. *Evidence of conversations of defendant as to circumstances of offense, not involving confession.*—Conversation of a sheriff with defendant, concerning an arrest by defendant, occurring after he made the

arrest and after the prisoner had escaped, is admissible on the trial of defendant for allowing the escape, it not being used to show a confession (for in it defendant denied his guilt), but as containing an account of the arrest and escape.

5. *Absence of warrant at time of arrest no excuse to officer for escape.*—A deputy sheriff cannot claim an acquittal for allowing a prisoner, whom he arrested, to escape, because when he made the arrest he did not have the warrant in his possession, having lost it.

6. *Charge on weight of testimony.*—An instruction that if the character of a witness for truth and veracity is shown to be bad he ought not to be believed at all is properly refused.

APPEAL from the Circuit Court of Madison.

Tried before the Hon. H. C. SPEAKE.

The appellant was convicted under an indictment charging him with allowing a prisoner to escape.

Upon the trial, as is shown by the bill of exceptions, the state introduced J. P. Powell as a witness; and after he had testified that he was the sheriff of Madison county, the solicitor asked him, ' When the office of Sidney Pentecost, as deputy sheriff, began, and to state whether or not he had given said Pentecost written authority to act as his deputy?'' The defendant objected to this question on the ground that it was illegal and inadmissible; and duly excepted to the action of the court in overruling his objection. The witness answered that he had given Sidney Pentecost written authority to act as his deputy, shortly after he became sheriff, but did not remember the exact date; that he had not seen the paper since he gave it to Pentecost; and that he had made a verbal demand upon him for the paper. This witness was then asked to state the contents of the instrument appointing Pentecost his deputy. The defendant objected to this question because it was illegal, inadmissible, and because no proper predicate had been laid for the introduction of the contents of said instrument. This objection was overruled, and the defendant duly excepted. The witness then replied that said written instrument was substantially as follows: ''I hereby authorize Sidney Pentecost to execute all papers that may come to his hands from my office, and to do such other duties as devolve upon him by law;'' and that said instrument was signed by him as sheriff of Madison county. The defendant objected to this testimony because the same was illegal, inadmissible, because no proper predicate had

been laid for its introduction, and because it was not shown that said Sidney Pentecost had taken the oath of office prescribed by section 255 of the Code, before proceeding to enter upon the duties devolving upon a deputy sheriff. The court overruled this objection, and the defendant duly excepted. One Jos. J. Smith was introduced as a witness for the state and testified that an affidavit was made out before him, as a justice of the peace for Madison county. charging Jim Jones, Jr., with an assault with a gun upon Jim Jones, Sr.; and thereupon the state asked the witness, "Whether or not he had issued the warrant of arrest for Jim Jones, Jr., upon said affidavit?" To which question the witness answered, ho had; and had delivered the warrant to the sheriff Powell. The defendant objected separately to this question and answer, and separately excepted to the overruling of his objection. The witness was then asked by the state, "If he had ever asked Pentecost for said writ since he had issued it?" The defendant duly excepted to the overruling of his objection to this question; and the witness answered, that a day or two after said warrant had been issued, Pentecost came into his office, and stated that he had lost said warrant of arrest, and that he had arrested Jim Jones, Jr.; but he had escaped and wanted an alias in order to rearrest him. The witness further stated that, notwithstanding he had demanded the warrant from Pentecost two or three times, Pentecost never returned it, but said that it was lost. The defendant objected to this answer, and duly excepted to the overruling of his objection. Against the objection and exception of defendant, this witness then stated the contents of said warrant of arrest. This witness further testified that Pentecost told him he had arrested Jim Jones, Jr., and while he was bringing him to jail, he escaped; but that he, Pentecost, had his watch. The court overruled the motion of the defendant to exclude this testimony, and the defendant duly excepted. Upon the reintroduction of the sheriff, Powell, as a witness for the state, he testified, in answer to a question, if he had any conversation with the defendant about the escape of Jones, that Pentecost told him that he arrested Jones, but he got away from him; that while he was bringing him on to Huntsville, the said Jones asked him to let him attend to a call of nature;

[Pentecost v. The State.]

that he took one of the handcuffs off, and allowed him to get down from the mule he was riding; that he then got back on the mule; and that as he was near to Huntsville, the prisoner seemed to be so gentle, that he took the other handcuff off of him; and that just as they were entering the city of Huntsville, the prisoner jumped down from his mule, and made his escape through an alleyway; that he pursued him, but was unable to catch him. The defendant objected to the question that elicited this testimony, and also moved to exclude the testimony; and duly excepted to the overruling of his objection and motion. On cross-examination, Powell testified that the defendant did not take any oath as deputy sheriff, and no certificate was made and indorsed as prescribed by section 255 of the Code. Upon the introduction of Jim Jones, Jr., as a witness by the state, he testified that he was the man who was arrested by the defendant Pentecost; that Pentecost came and read him a paper which he said was a warrant for his arrest for assault with a gun on Jim Jones, Sr.; witness did not read the paper, and could not read writing but very little; that he did not know what the paper was, except from what Pentecost said; that Pentecost then arrested him, and put a pair of handcuffs on him, and took his pocketbook and knife away from him, and started with him to Huntsville; that on the way the witness asked Pentecost, whether or not he ever turned a man loose for money; that upon Pentecost saying that he never had, witness told him he would give him his watch and all the money in his pocketbook, except a dollar and a half, if he would turn him loose; that Pentecost took his watch, and returned him a dollar and a half of his money, and when they got near Huntsville he turned the witness loose, and he made good his escape.

The defendant introduced several witnesses, who testified that they knew the general reputation for truth and veracity of the witness Jim Jones, Jr., in the community in which he lived; that it was bad, and they would not believe said Jones on oath. He also introduced several witnesses, who testified that they knew the general reputation of the defendant for fidelity and honesty in the community in which he lived, and that it was good. The defendant, as a witness in his own behalf, testified that he received a warrant of arrest is-

sued by J. J. Smith for the arrest of Jim Jones, Jr., charging him with an assault with a gun on Jim Jones, Sr.; that the warrant was handed to him by Powell, the sheriff, who asked him if he would execute it for him; that on his way to arrest said Jones, he lost a blank book out of his pocket, and also lost the warrant; that when he came up to Jim Jones, Jr., "he pulled out another paper, and read it over to him, as if it was a writ of arrest, and took him into custody; that he did not have the warrant at the time he arrested him, but had lost it." The defendant further testified that after his arrest, he put handcuffs on Jones, and took his pocketbook away from him, which was in keeping with the custom of officers when they arrested persons; that on their way to Huntsville, the prisoner asked the defendant, if he had ever turned a man loose, to which he replied no, and would not do so for one hundred dollars; that the prisoner then asked defendant if he would go to see his father, and try to get him to compromise the case, and promised to pay defendant two dollars if he would, and said he would give him his watch to keep until the prisoner paid him the two dollars; that defendant agreed to do this, and handed the pocketbook back to him, and the prisoner gave defendant his watch to keep until he should pay him the two dollars agreed upon; that on their way to town the prisoner said he wanted to attend to a call of nature, whereupon the defendant took one of the handcuffs off, and allowed him to do so; that just before getting into Huntsville, the defendant took the other handcuff off of the prisoner, saying to him that he never carried a man through town handcuffed; that just as they were entering Huntsville, the prisoner jumped down from off the mule he was riding, and made his escape through an alleyway; but defendant did not voluntarily allow the prisoner to escape and tried to recapture him, and could not. The defendant further testified that he had returned the prisoner's watch to his father, had never made any claim to said watch; and that when Jim Jones, Sr., the father of the prisoner, demanded the watch, he told him he would have to get advice on the subject, but afterwards delivered the watch to him; and that said Jones, Sr., did not threaten to prosecute him for not delivering the watch. In rebuttal, the state introduced Jim Jones, Sr., as a witness, and he testified

[Pentecost v. The State.]

that he did threaten to prosecute the defendant before he turned the watch over to him. The state then introduced again J. J. Smith, and asked him, "Whether or not he had a conversation with Sidney Pentecost relative to the demands said Jones, Sr., was making for said watch upon said Pentecost?" The defendant objected to this question because it was illegal and inadmissible, and duly excepted to the overruling of his objection. The witness replied, that he had, and said Pentecost stated he had a claim on the watch for services rendered; that the prisoner Jones had employed him to go to see the prisoner's father in reference to compromising said cause against him; that if he arrested Jones, Jr., in a week, he would give him the watch; but if he did not arrest him in that time, he would turn the watch over to the prisoner's father. The defendant objected to the introduction of this testimony, and moved to exclude it on the ground, that it was illegal and inadmissible; and duly excepted to the overruling of his objection and motion.

After the introduction of all the evidence, the court, among other things, instructed the jury as follows: (1) "If you believe from the evidence, beyond a reasonable doubt, that the defendant, at the time he arrested said Jim Jones, Jr., was acting as special deputy sheriff, specially deputized to make said arrest, then your verdict should be not guilty; but if you believe, beyond a reasonable doubt, that, at the time said defendant arrested said Jones, Jr., he was acting under the written authority given him as a general deputy by Sheriff Powell, and he voluntarily allowed said prisoner to escape, then your verdict should be guilty. I charge you, that, if he was acting under said general authority from said Powell at the time of said arrest, that it is immaterial whether he took the oath prescribed by section 255 of the Code of Alabama or not; he would be de facto an officer within the meaning of the law." (2) "If said Pentecost did not have the warrant of arrest at the time he arrested said Jim Jones, Jr., but had the warrant when he left, and lost it on the road, that he pretended to read a paper purporting to be said warrant of arrest, although in fact it was not said warrant, he would be estopped from denying that it was the warrant issued by said Justice Smith; and although the jury

[Pentecost v. The State.]

might believe that at the time he made said arrest, he did not have said warrant, yet the fact that he had pretended to have had the warrant at the time he made the arrest, this pretense on his part would estop him from denying that he had the warrant at the time he made said arrest; and consequently, he would be esteemed in law to have had the legal custody of said prisoner at the time of said escape.'' The defendant separately excepted to each of these portions of the court's general charge; and also separately excepted to the court's refusal to give each of the following written charges requested by him: (1) "If the jury believe the evidence they must find the defendant not guilty." (2) "I charge you in this case that under the facts Sidney Pentecost cannot be convicted of a voluntary escape:'' (3) ''Sidney Pentecost had no right to arrest Jim Jones, Jr., without a warrant; and if the jury believe from the evidence, that at the time he arrested Jim Jones, Jr., the said Pentecost had no warrant, then the arrest was unlawful, and said Pentecost was a mere trespasser, the charge is not sustained, and your verdict should be not guilty." (4) ''If the jury believe from all the evidence that Sidney Pentecost had lost the original warrant issued by J. J. Smith J. P., at the time he arrested Jim Jones, Jr., and that said warrant was then lost or mislaid, and has not since been found, then the said Jim Jones, Jr. was never in the legal custody of defendant, Sidney Pentecost, and your verdict should be not guilty." (5) "I charge you, as a matter of law, under the evidence in this case, that the defendant, Sidney Pentecost, was not a deputy sheriff of Madison county, Alabama, but merely the agent of J. P. Powell, sheriff of said county; and before the jury can convict this defendant of a voluntary escape, they must believe, from the evidence, beyond a reasonable doubt, that said Pentecost was deputy sheriff of Madison county at the time of the alleged escape of Jim Jones, Jr." (6) ''Neither an officer nor a private citizen has any right to arrest a man charged merely with a misdemeanor without a warrant. An assault with a gun is only a misdemeanor; and if the jury believe from all the evidence that the warrant issued for the arrest of Jim Jones, Jr., only charged him with an assault with a gun, and further that Sidney Pentecost at the time of

the arrest, had lost the warrant, and had not since found it, then he was only a trespasser, and did not have the lawful custody of Jim Jones, Jr., and your verdict should be not guilty."   (7)   "The jury may look to the testimony of witnesses as to the character of Jim Jones, Jr. for truth and veracity in the neighborhood in which he lives, and if the jury believe from the evidence that the reputation of Jim Jones, Jr., in the neighborhood in which he lives is bad for truth and veracity; and if the jury believe from all the evidence that Jim Jones, Jr.'s character is such that he ought not to be believed on his oath in a court of justice, then the jury may entirely disregard the evidence of the said Jim Jones, Jr." (8)   "If the jury believe the evidence, they must find the defendant not guilty of a voluntary escape." (9)   "If the jury believe from the evidence that the defendant did not have the warrant of arrest for Jim Jones, Jr., when he arrested him, then the defendant did not have said Jim Jones, Jr. in legal custody, and the defendant should be acquitted."   (10)   "If the jury believe from the evidence, beyond a reasonable doubt, that the defendant did not take the oath as deputy sheriff of Madison county, Alabama, as prescribed by section 255 of the Code of Alabama, no certificate was filed, or indorsement made as prescribed by said section, before said defendant proceeded to act in making said arrest, then the jury must find the defendant not guilty."   (11)   "The defendant cannot be convicted upon the uncorroborated testimony of the witness, Jim Jones, Jr."

E. L. Pulley and Humes, Sheffey & Speake, for the appellant.—Until said Pentecost took the oath of office, he was not an officer within the meaning of the law.

In the case of *Kavanaugh v. State*, 41 Ala., 401, it was held that the distinction between a special deputy and an officer recognized by the law was, that the oath of office was administered to and required of the one, and not of the other. In other words, that the oath of office was essential to constitute the person an officer in law. Since the rendition of this decision, the legislature passed § 255 of the Code, and especially excepted deputies who were deputized for a special purpose. Thus

giving legislative sanction to the correctness of the decision in Kavanaugh's case. The indictment in the case at bar charges that defendant was a general deputy, and the attempt is made to prove that he was employed and authorized to act as general deputy, and hence the oath of office, filing of certificate, as prescribed by said section was necessary to constitute him an officer in the meaning of the law. He was nothing more than the agent of the sheriff, and could not be charged with a voluntary escape.

The writ of arrest was the best evidence that it had been issued, and no notice had been given to produce it. Before secondary evidence can be used, the party wishing to use it, must give notice to adverse party to produce the written instrument.—3rd Brick Dig., p. 440; *Olive v. Adams*, 50 Ala., 373; *Foster v. The State*, 88 Ala., 182. The confessions or declarations of the defendant which the court permitted to go to the jury, were improperly admitted. No attempt was made by the State to show that they were voluntary, and no predicate was laid for their introduction. All confessions are *prima facie* involuntary, and they can be rendered admissible only by showing that they are voluntary, and not constrained, and this should be made satisfactorily to appear.—*Beckham v. State*, 100 Ala., 16; 3rd Brick Dig., p. 285, § 553.

There is nothing in the record to show that they were voluntary, and no attempt on part of the State to show it before the witness was allowed to prove them. If the defendant did not have the warrant of arrest when he took the prisoner in custody, then he was a trespasser, and could not be charged with this offence. The prisoner was never in legal custody. There is no principle of estoppel in this cause. The evidence of the fact of the loss of the warrant was before the jury, and the court having admitted it as legal evidence, the defendant should have received the benefit of it.

Wm. C. Fitts, Attorney-General, for the State.—Defendant's failure to take the oath cannot serve him as a screen. He was a rightful officer, holding a defeasable title, even when he had failed to take the oath. He was an officer *de facto*, and his acts were valid as pertaining to the public and to third parties.—Throop on Public

[Pentecost v. The State.]

Officers, par. 630-31-32-33; Throop on Public Officers, par. 651.

Being an officer *de facto*, he is criminally liable for misfeasance, malfeasance, etc., and he cannot set up the plea that he was not an officer *de jure*.—Throop on Public Officers, par. 668 and note; *Diggs v. The State*, 49 Ala. 311; *State v. McIntyre*, 3 Ired. 174; *State v. Mayberry*, 3 Strobh. 144, The State showed that the warrant had been issued, sent to the sheriff, and it had been by him turned over to the deputy, who is defendant in this cause, and that he set out to execute it. It is proved that after he had captured his prisoner, and released him, he went before the justice who had issued the original warrant, and told him that he had lost the original and that he wanted an alias, as he thought he' could yet find the defendant, It is shown that neither the original nor the alias was ever returned as is by law required, by the defendant, although the justice repeatedly demanded it of the said defendant, and was as repeatedly told that it was lost, and that when the defendant came upon the stand, he himself swore that the original warrant was lost by him along with his blank book. Such being the case, the court below committed no error.—*Baucum v. George*, 65 Ala, 259; 1 Brick. Dig., pp. 848-9, §§ 628, 632, 633, 643.

Neither was it error for the court to admit the declarations of the defendant. They were not confessions. He never at any stage of the proceedings admitted his guilt, or knowingly implicated himself. The testimony was simply as to his demeanor, actions and suspicious conduct *prior to his arrest* and before he was shown to have been suspected of the offense with which he is now charged. The courts have too often passed upon these points for their relevancy and legality to be drawn into question. "The number of indications" of guilt "cannot be numbered or defined." They are always admissible.—*McAdory v. The State*, 62 Ala. 154; *Blount v. The State*, 49 Ala. 381; *Durret v. The State*, 62 Ala. 435.

HARALSON, J.—1. There was no error in allowing the sheriff to testify that he had given the defendant written authority to act as his deputy. The statute— Code, § 809—requires a sheriff to have at least one

deputy.   There is nothing in the statutes requiring the appointment to be in writing.   At common law it might be made by parol, a power regarded as incident to the nature of the office, as being in furtherance of justice, and indispensable to the full and complete discharge of its duties.—*McGee v. Eastis*, 3 Stew. 308; *Harris v. Bradford*, 4 Ala. 220 ; *Miller v. McMillen*, *Ib*. 530 ; *Pond v. Vanderer*, 17 Ala. 427,   The written appointment which had been made in this instance, had been delivered into the possession of the defendant, was a collateral fact, the contents of which, like a receipt, might be proved by parol,   Besides, the sheriff had previously made a personal demand on defendant for the paper.

2.   The objection against the proof of the appointment of defendant as deputy, because it was not shown that he had taken the oath as prescribed by section 255 of the Code, is not well taken.   If the defendant failed to take the oath, as it was shown he did, this did not prevent his being an officer *de facto*, with respect to the public and third persons.   To this effect the authorities seem to be very generally uniform.—Throop on Pub. Officers, § 630; *Diggs v. The State*, 49 Ala. 311; *Cary v. The State*, 76 Ala. 78, *Floyd v. The State*, 79 Ala. 39; *Schloss v. Hewlett*, 81 Ala. 268, *Cook v. The State*, 91 Ala. 54; 3 Brick. Dig. 681, § 14.

The case of *Kavanaugh v. The State*, 41 Ala. 399, is relied on to show, that as defendant did not take an oath of office as deputy sheriff, he was not an officer of the law, either *de jure* or *de facto*, but was a mere agent of the sheriff, and could not, therefore, be charged with a voluntary escape.   What is found in that case to justify such a conclusion was declared to be a *dictum*, and repudiated in *Andrews v. The State*, 78 Ala. 483, and it was held, that a person occupying the position of a deputy under special appointment is an officer *de facto*. In *Floyd's Case, supra*, it was held, that an officer *de facto* executing process placed in his hands, is entitled to the same protection that the law gives to an officer *de jure;* and a person who is indicted for resisting him, or escaping from him, cannot be heard to question his appointment.   Surely, an officer *de facto*, who has executed a warrant of arrest, and who is indicted for a voluntary escape, cannot be heard to say as a defense, that he was merely an officer *de facto*.

3.   The existence of a record or office paper and its subsequent loss having been shown, its contents, as in the case of other documents, may be proved by secondary evidence.—*Baucum v. George,* 65 Ala. 259.   And the admission of a party against whom secondary evidence is offered, that the primary evidence does not exist, authorizes the introduction of inferior proof.—*Cooper v. Madden,* 6 Ala. 431.   The evidence in this case showed, that the warrant had been lost, and the defendant, himself, testified he lost it.   The evidence of its contents was properly admitted.

4.   There was no error in allowing the sheriff to testify as to a conversation he had with the defendant concerning the arrest, after he had made it and the prisoner had escaped.   These declarations were not sought as confessions of defendant's guilt, for, in them, he denied his guilt; but, they gave an account of the arrest and escape, which, in connection with the other evidence in the cause, furnished some indications of guilt, and were competent, even if slight, to be considered by the jury. *McAdory v. The State,* 62 Ala. 159; *Durrett v. The State, Ib.* 434.   And what the witness Jos. J. Smith, recalled in rebuttal, was allowed to depose, touching a conversation with defendant relative to the demands that Jones, Sr.,—the father of the party arrested,—was making for the watch of the accused, which defendant had in his possession, was competent evidence to go to the jury, as declarations of the defendant in respect to the matter enquired about.

5.   The evidence tended to show, also, that the warrant of arrest, regular in form, after it had been issued by the justice of the peace to the sheriff, was by him delivered to the defendant, who was requested by the sheriff to execute it, and who, receiving it from the sheriff, agreed to make the arrest under it.   It further tended to show, that the defendant, as deputy sheriff did arrest the deceased, having in his possession at the time, said warrant, which he exhibited and read to the accused.   Defendant testified, he lost the warrant, while on his way to make the arrest, and made it without having the paper; that the accused submitted to the arrest, under the warrant the defendant claimed to have, was taken in charge and manacled, and afterwards, when near the jail, made his escape.   The State claims that

[Jones v. The State.]

the escape was allowed by the defendant, for a consider-
ation paid to him by the accused.   There was evidence
tending to show the guilt of defendant, and other evi-
dence that he was not guilty.

The court charged the jury, that the defendant could
not claim an acquittal, as was sought by him, on the
ground, if true, that when the arrest was made, he did
not have the warrant in his possession but had lost it;
that having arrested the accused, under the circum-
stances shown, he was estopped to deny that he had said
warrant, and to claim that the arrest was for that reason
illegal.   In this there was no error.

The first branch of the court's general charge, was
too favorable to the defendant, and there is nothing in
the charge as a whole of which he can complain.

From what has been said it will appear, that there
was no error in the refusal of the court to give charges 1,
2, 3, 4, 5, 6, 8, 9 and 10 requested by defendant.

There was no error in refusing charge 7.   It is argu-
mentative and calculated to mislead.   It makes the im-
pression, that if the character of a witness is shown to
be bad for truth and veracity, he ought not to be be-
lieved at all in a court of justice.   It is the province of
the jury to believe him or not, on his own and all the
other evidence in the cause.

The 11th charge requested was properly refused.
*Moore v. The State*, 68 Ala. 360; *Nabors v. The State*,
82 Ala. 8.

There is no error in the record, and the judgment of
the court below is affirmed.

Affirmed.